**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 |
| In Re: WIRE HARNESS CASES | Honorable Marianne O. Battani |
| THIS DOCUMENT RELATES TO: | |
| All Automobile Dealer Actions and All End-Payor Actions | W:12-CV-00102-MOB-MKM<br>W:12-CV-00103-MOB-MKM |

**REPLY MEMORANDUM IN SUPPORT OF THE GS ELECTECH DEFENDANTS'[1] MOTION TO DISMISS THE AUTO-DEALER AND END-PAYOR COMPLAINTS**

[1] The "GS Electech Defendants" are G.S. Electech, Inc., G.S. Wiring Systems Inc., and G.S.W. Manufacturing, Inc.

**STATEMENT OF THE ISSUE PRESENTED**

Whether the Automobile Dealers Consolidated Class Complaint and End-Payor Corrected Consolidated Amended Class Action Complaint fail to state a claim against movants under Fed. R. Civ. P. 12(b)(6) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

1. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

2. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

3. *Carrier Corp. v. Outokumpu*, 673 F.3d 430 (6th Cir. 2012)

4. *Precision, Inc. v. Kenco/Williams, Inc.*, 66 Fed. Appx. 1 (6th Cir. 2003)

5. *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961 (N.D. Iowa 2011)

6. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2010 WL 2629728 (N.D. Cal. June 29, 2010)

7. *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs.*, No. 11-4203, slip op. (6th Cir. Dec. 3, 2012)

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ........................................................................... 1

I. The Failure of GS Electech's Plea Agreement to Support Any Overarching Conspiracy . 1

II. The Limited Nature of GS Electech's Plea Agreement and the Government's Judicial Concession Completely Undermine The Possibility of Any Reasonable Inference of Participation in Any Alleged Overarching Conspiracy ..................................................... 3

III. Separate Guilty Pleas Relating to Different Suppliers, Thirteen Different Products and Different Automobile Manufacturers Cannot Form the Bases for Plausibly Inferring an Overarching Conspiracy in the Same Market as Alleged by the Auto Dealers and End Payors............................................................................................................................. 6

IV. There Are No Factual Allegations to Support That G.S. Wiring or G.S.W. Manufacturing Were Parties to Any Overarching Conspiracy..................................................................... 8

CONCLUSION............................................................................................................... 9

## TABLE OF AUTHORITIES

### Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ........ 2

*Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ........ 4

*Begala v. PNC Bank, Ohio, NA*, 214 F.3d 776, 784 (6th Cir. 2000) ........ 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n. 13 (2007) ........ 4

*Carrier Corp. v. Outokumpu*, 673 F.3d 430, 445-446 (6th Cir. 2012) ........ 8

*In re: Chocolate Confect. Antitrust Litig.*, 602 F.2d 538, 551-52 (M.D. Pa. 2009) ........ 7

*In re: Elevator Antitrust Litig.*, 502 F.3d 47, 49-51 (2d Cir. 2007) ........ 8

*In re: Fasteners Antitrust Litig.*, No. 08-md-1912, 2011 WL 3563989 (E.D. Pa. Aug. 12, 2011) 6

*In re: High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 661 (7th Cir. 2002) ........ 7

*In re: Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp.2d 961, 975 (N.D. Iowa 2011). 5, 8

*In re: Packaged Ice Antitrust Litig.*, 723 F. Supp.2d 987, 1003 (E.D. Mich. 2010) ........ 5

*In re: Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 902-03 (N.D. Cal. 2008) ........ 7

*In re: TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2010 WDL 2629728 (N.D. Cal. June 29, 2010) ........ 7, 8

*In re: Vitamins Antitrust Litig.*, No. MISC 99-197, 2000 WL 1475705 (D.D.C. May 9, 2009) .... 4

*Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs.*, No. 11-4203, slip op. at 18 (6th Cir. Dec. 3, 2012) ........ 3

*Precision, Inc. v. Kenco/Williams, Inc.*, 66 Fed. Appx. 1, 2003 WL 1517241 (6th Cir. Mar. 21, 2003) ........ 8

*Rondigo, LLC. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) ........ 4

*Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) ........ 6

### Rules

Fed. R. Evid. 201 ........ 4

## PRELIMINARY STATEMENT

Plaintiffs' Opposition to the GS Electech Defendants'[2] Motion to Dismiss the Auto Dealers and End-Payor Complaints[3] fails to adequately address or rebut the following flaws in the Plaintiffs' arguments: (1) the absence of any factual information in GS Electech's plea agreement that supports the plausibility that any of the GS Electech Defendants were a party to, or participated in, any alleged global, and overarching, massive wire harness conspiracy (hereinafter referred to as "overarching conspiracy"); (2) despite Plaintiffs' consistent reference to the global investigation conducted by the government, there is no rebuttal whatsoever to the government's judicial concession that GS Electech was not a party to, and did not participate in, any overarching conspiracy with Yazaki, Furukawa or other major suppliers (*see* Exhibit B at 5-6 to GS Electech Defendants' Motion to Dismiss); and (3) the failure of Plaintiffs to allege any factual information that supports the bald assertion that the thirteen (13) different products sold by thirty-four (34) different supplier-defendants constitute "the same market" or are homogeneous, fungible or substitutable.

### I. The Failure of GS Electech's Plea Agreement to Support Any Overarching Conspiracy

One can search the Plaintiffs' Complaints and their Opposition to the GS Electech Defendants' Motion to Dismiss and not find any factual averments to support GS Electech's participation in an alleged single overarching conspiracy. The Opposition Brief is replete with

---

[2] These defendants are G.S. Electech, Inc. ("GS Electech") and two subsidiary corporations — G.S. Wiring Systems, Inc. ("G.S. Wiring") and G.S.W. Manufacturing, Inc. (G.S.W. Manufacturing"). This Reply Brief is being filed pursuant to the timetable established in CMO 1 and master case Docs. 202 and 203.

[3] *See* Doc. 80 in Automotive Dealership class case W:12-cv-00102 and Doc. 96 in End-Payor class case W:12-cv-00103 (hereinafter "Opp. Br."). The GS Electech Defendants' Motion to Dismiss the Auto Dealers and End-Payor Complaints (hereinafter "GS Electech Defendants' Motion to Dismiss") was filed as Doc. 61 in class case W:12-cv-00102 and Doc. 72 in W:12-cv-00103.

conclusory arguments including references to opportunities to conspire, the guilty pleas of other defendants, viewing the allegations of the Complaints as a whole, and the government's globally coordinated investigation as well as investigations by other authorities. *See* Opp. Br. at 1, 11-12, 14, 15. However, none of these conclusory arguments have factual support and, therefore, do not add up to the purported single overarching conspiracy alleged by Plaintiffs. In addition, there are no facts to support the insinuations that the GS Electech Defendants actually participated in any specific "opportunities to conspire" or were involved in "other government investigations" or other guilty pleas. Neither the Japanese Fair Trade Commission nor the European Commission has taken any investigatory or other action directed at the GS Electech Defendants and the guilty pleas of other defendants make no mention of the GS Electech Defendants. Indeed, none of these investigating agencies, including the United States Department of Justice ("DOJ"), has ever alleged a single overarching conspiracy. Nor do the several separate guilty pleas provide factual support for such an overarching conspiracy.

The global investigation conducted and coordinated by the DOJ did not result in any reference in GS Electech's plea agreement that it had participated in a single overarching conspiracy affecting a group of homogeneous products in the auto parts industry. The plea relates solely to one other co-conspirator entity, one customer, and one product. The plea agreement is limited to speed sensor wire assemblies and makes no reference to other products such as wire harnesses generally or electronic control units, fuse boxes, relay boxes, junction boxes, etc. *See* Exhibit A at ¶ 4a to GS Electech Defendants' Motion to Dismiss.

The absence of any factual information to support the Plaintiffs' conclusory assertions does not permit even "the mere possibility" of a reasonable inference of the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Ohio Police & Fire Pension Fund v. Standard &*

*Poor's Fin. Servs.*, No. 11-4203, slip op. at 18 (6th Cir. Dec. 3, 2012). In view of the government's judicial acknowledgement of GS Electech's non-participation, experience and common sense dictate that there can be no reasonable inference that the GS Electech Defendants were a party to any overarching conspiracy as alleged in Plaintiffs' Complaints.

## II. The Limited Nature of GS Electech's Plea Agreement and the Government's Judicial Concession Completely Undermine The Possibility of Any Reasonable Inference of Participation in Any Alleged Overarching Conspiracy

The Plaintiffs' Opposition Brief references certain specific comments made by government counsel during GS Electech's plea hearing, to the effect that "the case arose out of the same investigation" and "is related to those other cases." *See* Opp. Br. at 8, n. 8; Exhibit B at 14 to GS Electech Defendants' Motion to Dismiss (Transcript of Plea Hearing). However, the Plaintiffs omit any mention of the government's judicial concession during that hearing that: (1) ". . . the available evidence neither indicates nor suggests that G.S. Electech was a party to any overarching wire harness conspiracy involving the companies which have been previously charged or have pled guilty in this Court, including Furukawa and Yazaki, and certain other major suppliers;" and (2) "The plea agreement makes it clear that G.S. Electech was involved with only one other co-conspirator. So it is a two company conspiracy." *See* Exhibit B at 5-6 to GS Electech Defendants' Motion to Dismiss.

The Plaintiffs cannot rely on some general statements about the scope of the investigation made by government counsel at the plea hearing without being bound by the government's very specific concession about GS Electech's limited culpability and the absence of "overarching" conspiratorial conduct with other defendants who also pled guilty. Both Complaints rely on an alleged broad coordinated investigation conducted by DOJ and its European and Japanese

counterparts. *See* Auto Dealers' Consolidated Class Action Complaint ("AD CCC") at ¶¶ 168-182; End-Payors' Corrected Consolidated Class Action Complaint ("EP CAC") at ¶¶ 164-171. However, the Plaintiffs can gain no solace from these extensive references in their Complaints, and cannot escape the result of the DOJ investigation as it relates specifically to the GS Electech Defendants: the government judicially conceded that there was no participation in any overarching conspiracy. Moreover, neither the United States government nor the other antitrust authorities have ever alleged any overarching conspiracy.

The Plaintiffs' reliance on *In re: Vitamins Antitrust Litig.*, No. MISC 99-197, 2000 WL 1475705 (D.D.C. May 9, 2009) is misplaced. They conveniently omit a critical portion of the quoted language that narrow guilty pleas do not foreclose the possibility of a broader conspiracy. *See* Opp. Br. at 8. The omitted portion of the cited language states: "Moreover, the Court has no evidence of the government's view of the scope of this conspiracy. . . ." *In re: Vitamins* at *11, n. 13. Unlike *In re: Vitamins*, this Court has the government's view — its judicial concession — which clearly and unalterably reflects the government's assessment of the evidence developed as a result of its broad, global investigation: GS Electech was not a party to any global and overarching conspiracy. Under these circumstances, this Court is entitled to take judicial notice of the full content of the government's statements during the plea hearing. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n. 13 (2007).[4]

Despite the Plaintiffs' reliance on GS Electech's plea agreement, the plea agreements of other defendants, the references to the government's global investigation, and the statement that GS Electech's plea arose out of the government's investigation, there is no factual information to

---

4 This Court can take judicial notice of the full content of the hearing transcript referenced in Plaintiffs' Complaints and relied upon in their Opp. Br. *Rondigo, LLC. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011); *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). *See also* Fed. R. Evid. 201.

support the "larger picture" upon which to predicate a reasonable inference of GS Electech's plausible participation in any alleged overarching conspiracy. *In re: Iowa Ready-Mix Concrete Antitrust Litig*., 768 F. Supp.2d 961, 975 (N.D. Iowa 2011).

The cases relied upon by Plaintiffs to the effect that courts are not limited to the context of guilty pleas are inapposite because those cases also involved additional factual allegations that went beyond the narrow context of the plea agreements. Conclusory assertions of a more expansive view of narrow plea agreements cannot substitute for the prerequisite factual information.

Moreover, none of Plaintiffs' cited cases involve the situation here, where the government expressly conceded that the GS Electech Defendants did not participate in an overarching conspiracy. Opp. Br. at 7-11. For example, absent from Plaintiffs' Complaints are the additional factual circumstances available to the court in *In re: Packaged Ice Antitrust Litig*., 723 F. Supp.2d 987, 1003 (E.D. Mich. 2010) which included: (1) the same product – packaged ice; (2) the guilty pleas of certain key, high executives relating to other geographical locations; and (3) allegations of nationwide collusion of the defendants based upon insider admissions. *Id*. at 1000-1001; 1003. Moreover, unlike GS Electech's situation, the government in *In re: Packaged Ice* took no position with respect to a broader conspiracy covering the entire United States. In the instant case, the government clearly and without equivocation judicially conceded that GS Electech was neither a party to, nor a participant in, any alleged broader or overarching conspiracy.

Missing here are any factual allegations that support the plausibility that the GS Electech Defendants were participants in a single overarching plan or conspiracy. Certainly GS Electech's plea does not plausibly support the existence of a broader overarching conspiracy or

plan. The government's concession made after the "globally coordinated investigation" described by Plaintiffs, is conclusive on that issue.[5] It defies common sense and any reasonable concept of plausibility to contend that the GS Electech Defendants were involved in an overarching conspiratorial plan. Opp. Br. at 1.

### III. Separate Guilty Pleas Relating to Different Suppliers, Thirteen Different Products and Different Automobile Manufacturers Cannot Form the Bases for Plausibly Inferring an Overarching Conspiracy in the Same Market as Alleged by the Auto Dealers and End Payors

The Plaintiffs contend that somehow thirteen different products produced by thirty-four (34) different suppliers constitute the "same market" and supports the existence of an inference of an overarching conspiracy despite the disparate and separate guilty pleas of the defendants. Opp. Br. at 11-12. However, there is no support for this contention in the absence of any factual information indicating the existence of such a market.

The Plaintiffs rely on *In re: Fasteners Antitrust Litig.*, No. 08-md-1912, 2011 WL 3563989 (E.D. Pa. Aug. 12, 2011) for the contention that the product assembled by GS Electech — speed sensor wires — supports the conclusion that it was a party to an overarching conspiracy relating to alleged "homogenous" products in the wire harness industry. Opp. Br. at 5-6. However, fasteners essentially perform the same functions whether zippers, buttons, snap fasteners, hooks or similar products — all can be used to connect two pieces of fabric. The products included by Plaintiffs in "Automotive Wire Harness Systems" do not perform the same functions and are not homogeneous, fungible, interchangeable and/or substitutable. For

[5] The Plaintiffs reliance on *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) is misplaced because they omit the essential holding of that decision. Opp. Br. at 10. In that civil rights case, the Court confirmed the requirement that to be a co-conspirator a party must share in the objective or plan of the alleged conspiracy — here the overarching conspiracy. *Spadafore*, 330 F.3d at 854. The Sixth Circuit affirmed the grant of summary judgment on the conspiracy claim because there was no evidence, circumstantial or otherwise, "suggesting" that the defendants were part of the overall "single plan."

example, speed sensor wires do not perform the same function as body ECUs, wire terminals, fuse boxes, junction blocks, instrumental panel clusters or heater control panels. These products are neither fungible nor substitutable. Moreover, the *In re: Fasteners* case involved specific factual allegations relating to worldwide suppliers of the same fastener products and described top executives who met and reached agreement on dozens of occasions, coordinated worldwide prices, discussed global cooperation, and allocated the worldwide sales of the subject fasteners. The Plaintiffs' Complaints contain no such factual allegations.

The same is true of the other cases relied upon by Plaintiffs. Those cases — *In re: Static Random Access Memory (SRAM) Antitrust Litig*., 580 F. Supp. 2d 896, 902-03 (N.D. Cal. 2008); *In re: High Fructose Corn Syrup Antitrust Litig*., 295 F.3d 651, 661 (7th Cir. 2002); *In re: Chocolate Confect. Antitrust Litig*., 602 F.2d 538, 551-52 (M.D. Pa. 2009) — involved allegations of additional factual information over and above the guilty pleas to support the existence of conspiracies broader than that which had been charged by the government. *In re: TFT-LCD (Flat Panel) Antitrust Litig*., MDL No. 1827, 2010 WDL 2629728 (N.D. Cal. June 29, 2010) rejected application of those cases because they involved: ". . . specific factual allegations . . . with respect to the specific products or markets at issue, in addition to allegations concerning guilty pleas with respect to the other products or markets." *Id*. at *5. There are no such factual or specific allegations to link GS Electech to any overarching conspiracy based on the product it assembled or on any other basis. Nor are there any other alleged factual circumstances that would permit any inference that the GS Electech Defendants had any commitment to any broad, overarching planned conspiracy. *Id*. at *7.

In short, the Plaintiffs' Complaints contain no factual support for the conclusory assertions that the defendants compete with each other for the sale of interchangeable,

homogeneous products that constitute a "single product market." Without such factual support there can be no reasonable inference of an overarching conspiracy in that market. *In re: Elevator Antitrust Litig*., 502 F.3d 47, 49-51 (2d Cir. 2007); *In re: Iowa Ready-Mix Concrete Antitrust Litig*., 768 F. Supp.2d 961, 976 (N.D. Iowa 2011). In any event, there are certainly no factual averments that remotely link the GS Electech Defendants to any single overarching conspiracy involving a single market for wire harnesses.

## IV. There Are No Factual Allegations to Support That G.S. Wiring or G.S.W. Manufacturing Were Parties to Any Overarching Conspiracy

Neither G.S. Wiring nor G.S.W. Manufacturing entered into any guilty plea. Thus, there are no allegations linking G.S. Wiring or G.S.W. Manufacturing to any alleged antitrust violation, not to mention any overarching conspiracy. The only allegations relating to these two entities describe them as wholly-owned subsidiaries of GS Electech. (EP CAC ¶¶ 119-120; AD CCC ¶¶ 125-126). Consequently, the Auto Dealers and End-Payors fail to meet the rudimentary requirements of the *Twombly-Iqbal* standard of plausibility.

The Plaintiffs implicitly recognize the failure of their allegations to measure up to the plausibility standard with respect to these subsidiaries and alternatively seek to amend their Complaints. Opp. Br. at 18 n. 14. However, the suggested reasons for amendment add nothing to the inquiry except that these two entities are wholly-owned subsidiary corporations of GS Electech. *Id*. There are no allegations in the Complaints to support piercing the corporate veil or that the subsidiaries were merely alter egos of the parent. *Carrier Corp. v. Outokumpu*, 673 F.3d 430, 445-446 (6th Cir. 2012); *Precision, Inc. v. Kenco/Williams, Inc.*, 66 Fed. Appx. 1, 2003 WL 1517241 (6th Cir. Mar. 21, 2003); *In re: TFT-LCD (Flat Panel) Antitrust Litig*., MDL No. 1827, 2010 WL 2629728 (N.D. Cal. June 29, 2010) at *7. Nor would the proposed suggested additions

change the outcome because they merely confirm that the entities are wholly-owned subsidiaries. Opp. Br. at 18 n. 14.[6] In any event, the government's judicial concession that GS Electech was not a party to any overarching or global conspiracy eliminates any prospect that an amendment could overcome that concession or the possibility of coming up with a plausible inference of such participation.

## CONCLUSION

Dismissal with prejudice is appropriate in the instant situation. There is no likelihood that Plaintiffs could amend their Complaints with factual information supporting the assertion that the GS Electech Defendants were a party to an overarching conspiracy. In view of the government's judicial concession, clear precedent and common sense support dismissal. The Plaintiffs should not be unleashed to impose upon the GS Electech Defendants the crushing costs of these complex and protracted antitrust class actions - - just because they say so.

[6] It should be noted that the preferred procedure to amend in this Circuit requires that the Plaintiffs file a motion for leave to amend with a proposed amended complaint. *Begala v. PNC Bank, Ohio, NA*, 214 F.3d 776, 784 (6th Cir. 2000).

Respectfully submitted,

PORTER WRIGHT MORRIS & ARTHUR LLP

By: /s/

Donald M. Barnes
Salvatore A. Romano
1919 Pennsylvania Ave., N.W., Ste 500
Washington, D.C. 20006
Telephone: (202) 778-3000
Facsimile: (202) 778-3063
E-mail: dbarnes@porterwright.com
E-mail: sromano@porterwright.com
DC Bar No. 0471
*Attorneys for Defendants G.S. Electech, Inc., G.S. Wiring Systems, Inc., and G.S.W. Manufacturing, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2013, I electronically filed the above reply memorandum on behalf of G.S. Electech, Inc., G.S.W. Manufacturing, Inc., and G.S. Wiring Systems, Inc. with the Clerk of the Court using the ECF system, which will send notification of such filing to the ECF participants.

By: : _______/s/______________________________

Donald M. Barnes
1919 Pennsylvania Ave., N.W., Ste 500
Washington, D.C. 20006
Telephone: (202) 778-3000
Facsimile: (202) 778-3063
E-mail: dbarnes@porterwright.com
DC Bar No. 0471
*Attorney for Defendants G.S. Electech, Inc., G.S. Wiring Systems, Inc., and G.S.W. Manufacturing, Inc.*