**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____
                                                          :
In Re:  AUTOMOTIVE PARTS            :        12-MD-02311
ANTITRUST LITIGATION                   :        **Honorable Marianne O. Battani**
_____:
                                                          :
In Re: WIRE HARNESS CASES           :
_____:
                                                          :
THIS RELATES TO:                           :
ALL DEALERSHIP CASES                   :        **2:12-cv-00102-MOB-MKM**
_____:

**SETTLEMENT AGREEMENT BETWEEN THE DEALERSHIP
PLAINTIFF CLASS AND DEFENDANTS LEAR CORPORATION
AND KYUNGSHIN-LEAR SALES AND ENGINEERING, LLC**

This Settlement Agreement is made and entered into as of the 5th day of May, 2014, by and between defendants Lear Corporation ("Lear") and Kyungshin-Lear Sales and Engineering, LLC ("KL Sales") and the Dealership Plaintiffs (defined herein) in the above-captioned action, a multidistrict consolidated class action, and each action brought individually and on behalf of a class of automotive dealership purchasers of Automotive Wire Harness Systems (defined herein) consolidated therein, including without limitation the actions set forth on **Exhibit A** hereto.

WHEREAS, the plaintiffs have alleged that Lear and KL Sales participated in a conspiracy with other manufacturers of Automotive Wire Harness Systems to rig bids for, and to raise, fix, maintain, or stabilize the prices of, Automotive Wire Harness Systems sold in the United States from at least as early as January 1, 2000, until the present, in violation of the antitrust laws of the United States and various State antitrust and consumer protection laws;

WHEREAS, Lear and KL Sales each deny the allegations in plaintiffs' complaints, have asserted affirmative defenses against the claims alleged in the Actions (defined herein), and deny any liability whatsoever;

WHEREAS, Lear represents that it never received a subpoena in connection with the Department of Justice's recent investigation into automotive wire harness collusion, never was

1

identified as the subject or target of any such investigation, never was indicted, never pled guilty to any crime, and never was named in or implicated by the guilty pleas entered by other defendants;

WHEREAS, KL Sales represents that it never received a subpoena in connection with the Department of Justice's recent investigation into automotive wire harness collusion, never was identified as the subject or target of any such investigation, never was indicted, never pled guilty to any crime, and never was named in or implicated by the guilty pleas entered by other defendants;

WHEREAS, in November 2011, Lear moved the Bankruptcy Court (defined herein) for entry of an order enforcing the discharge and injunction entered in connection with the Bankruptcy Court's confirmation of Lear's reorganization Plan (defined herein), which would have the effect of barring the Actions in whole or substantial part;

WHEREAS, that motion has been briefed, argued, and is pending before the Bankruptcy Court;

WHEREAS, Dealership Plaintiffs, on behalf of themselves and the Settlement Class Members (defined herein), Lear, and KL Sales agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of the truth of any of plaintiffs' claims or allegations in the Actions;

WHEREAS, arm's-length settlement negotiations have taken place between Class Plaintiffs' Co-Lead Counsel (defined herein) and Lear and KL Sales, respectively, and this Settlement Agreement, including its exhibits, embodies all of the terms and conditions of the good-faith settlement between Lear, KL Sales, and Dealership Plaintiffs, both individually and on behalf of the Settlement Class Members, and has been reached as a result of the parties' negotiations, subject to approval of the Court (defined herein) as provided herein;

WHEREAS, the parties recognize that because of joint and several liability, the Settlement Agreement with Lear and KL Sales does not impair Dealership Plaintiffs' ability to

collect from others the full amount of damages to which they and the Settlement Class claim entitlement in these Actions;

WHEREAS, Class Plaintiffs' Co-Lead Counsel (defined herein) have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the complaints filed in the Actions, the legal and factual defenses thereto, and the applicable law, that it would be in the best interests of the Settlement Class (defined herein) to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Settlement Class and, further, that Class Plaintiffs' Co-Lead Counsel consider the settlement set forth herein to be fair, reasonable, adequate, and in the best interests of the Settlement Class; and

WHEREAS, Lear and KL Sales have agreed to enter into this Settlement Agreement in order to avoid the expenses, risk, and burden of further litigation, to obtain the releases, orders, and judgment contemplated by this Settlement Agreement, and to put to rest with finality all claims that have been or could have been asserted against them based on the allegations in plaintiffs' complaints;

NOW, THEREFORE, in consideration of the agreements herein set forth, it is agreed by and among the undersigned that the claims of the Dealership Plaintiffs and the Settlement Class Members be settled, compromised, and dismissed on the merits and with prejudice as to Lear, KL Sales, and all other Released Parties (defined herein) and, except as hereafter provided, without costs against the Settlement Class, Lear, or KL Sales, subject to the approval of the Court, on the following terms and conditions:

1.      Definitions.

The following capitalized terms, as used in this Settlement Agreement, have the following meanings:

a.      "*Actions*" means the automotive dealership antitrust class actions consolidated under the caption *In re Automotive Parts Antitrust Litigation, Wire Harness Cases,*

Master Case No. 12-cv-00102 (MOB), currently pending in the United States District Court for the Eastern District of Michigan, Southern Division.

   b.   "*Automotive Wire Harness Systems*" for purposes of this Settlement Agreement only, has the same definition as set forth in ¶ 3 of the Complaint, specifically "automotive electrical distribution systems used to direct and control electronic components, wiring, and circuit boards in an automotive vehicle…. Automotive Wire Harness Systems include the following:  automotive wire harnesses, speed sensor wire assemblies, automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, electronic control units, fuse boxes, relay boxes, junction blocks, high voltage wiring and power distributors"; *provided*, *however*, that for purposes of paragraphs 5 and 22 hereof, the term shall be limited to Automotive Wire Harness Systems as and to the extent used by Lear and/or KL Sales in their manufacture of  automotive wire harnesses.

   c.   "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York.

   d.   "*Bankruptcy Reserve*" means the assets held in reserve pursuant to Article VI.B.3 of the Plan on account of disputed claims against the Debtors that became or become "Allowed Claims" (as defined in the Plan) subsequent to the the Plan Effective Date.

   e.   "*Bankruptcy Reserve Settlement Proceeds*" means New Common Stock and Other General Unsecured Claims Warrants with a market value, in the aggregate, of nine hundred nineteen thousand, three hundred seventy-seven US Dollars ($919,377 USD), measured using the closing trading price of New Common Stock on the Execution Date to be paid as set forth in paragraph 7 herein and as may be adjusted as set forth in paragraph 8 herein.

   f.   "*Class Plaintiffs' Co-Lead Counsel*" means the law firms of Cuneo Gilbert & LaDuca, LLP, 507 C Street, N.E., Washington, DC 20002; Barrett Law Group, P.A., P.O. Box 927, 404 Court Square, Lexington, MS 39095; and Larson · King, LLP, 2800 Wells Fargo Place, 30 East Seventh Street, St. Paul, MN 55101.

g.      "*Complaint*" means Dealership Plaintiffs' Second Consolidated Class Action Complaint, Dkt. 125, filed July 17, 2013.

h.      "*Court*" means the United States District Court for the Eastern District of Michigan where the Actions are pending.

i.      "*Dealership Plaintiffs*" means those Settlement Class Members as defined in subparagraph gg, below, who are named plaintiffs in the Complaint.

j.      "*Debtors*" shall mean, collectively, Lear Corporation; Lear #50 Holdings, LLC; Lear Argentine Holdings Corporation #2; Lear Automotive Dearborn, Inc.; Lear Automotive Manufacturing, LLC; Lear Canada; Lear Canada Investments Ltd.; Lear Corporation (Germany) Ltd.; Lear Corporation Canada Ltd.; Lear Corporation EEDS and Interiors; Lear Corporation Global Development, Inc.; Lear EEDS Holdings, LLC; Lear European Operations Corporation; Lear Holdings, LLC; Lear Investments Company, LLC; Lear Mexican Holdings Corporation; Lear Mexican Holdings, LLC; Lear Mexican Seating Corporation; Lear Operations Corporation; Lear Seating Holdings Corp. #50; Lear South Africa Limited; Lear South American Holdings Corporation; Lear Trim L.P.; and Renosol Seating, LLC.

k.      "*Defendant*" means any person or entity named as a defendant in the Complaint.

l.      "*Document*" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

m.      "*Effective Date*" means the date on which Final Approval of this settlement has been obtained.

n.      "*Escrow Account*" means the account or accounts meeting the requirements of Treas. Reg. § 1.468B-1(c)(3) to be established by Class Plaintiffs' Co-Lead

Counsel for receipt of the Settlement Amounts to be paid by Lear and KL Sales pursuant to this Settlement Agreement.

        o.      "*Escrow Agent*" means the escrow agent responsible for administering the Escrow Account.

        p.      "*Execution Date*" means the date first appearing above.

        q.      "*Final Approval*" means the first date upon which all of the following three conditions shall have been satisfied:

        i.   This settlement has been approved in all respects by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

        ii.   Entry has been made, as provided in paragraph 6 hereof, of the final judgment of dismissal that shall be provided in advance to and agreed to by Lear and KL Sales; and

        iii.   Either (a) the time to appeal, or to seek permission to appeal, the Court's approval of the settlement as described in (i) hereof and entry of final judgment as described in (ii) hereof has expired with no appeal having been taken or permission to appeal having been sought; or (b) such approval and final judgment have been affirmed in their entirety by the court of last resort to which any appeal has been taken or petition for review has been presented, and such affirmance has become no longer subject to the possibility of further appeal or review.  It is agreed that in determining the times for appeal, further appeal, or review, the provisions of Fed. R. Civ. P. 60 and of the All Writs Act, 28 U.S.C. § 1651, shall not be taken into account.

        r.      "*Final Bankruptcy Order*" shall mean a Final Order authorizing and approving Lear's distribution of assets as contemplated in this Settlement Agreement in an amount equivalent to the Bankruptcy Reserve Settlement Proceeds from the Bankruptcy Reserve

to the Escrow Account for the purpose of settling the Actions pursuant to the terms of this Settlement Agreement.

        s.      "*Final Order*" shall mean an order or judgment of a court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice.

        t.      "*Indirect Purchaser States*" for purposes of this Settlement Agreement only means Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusssetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

        u.      "*Liquidation Date*" shall mean the date on which the Dealership Plaintiffs liquidate or cause liquidation of the Bankruptcy Reserve Settlement Proceeds.

        v.      "*Motion*" as used in paragraph 4 herein means a motion for preliminary approval of the settlement contemplated by this Settlement Agreement and for a stay of all proceedings in the Actions against Lear and KL Sales until the Court renders a final decision regarding the approval of the settlement and, if it approves the settlement, enters the final judgment.

        w.      "*Notice Costs*" means the fees and costs necessary to provide notice of the settlement to Settlement Class members.

        x.      "*Plaintiffs' Counsel*" means those attorneys or law firms retained as counsel for any of the plaintiffs in any of the Actions.

y. "*Plan*" means, collectively, (a) the Debtors' joint plan of reorganization under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1531, either in its present form, or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or the terms thereof, and (b) the supplements to the Plan filed with the Bankruptcy Court in conjunction with the Plan, and which were incorporated therein by reference.

z. "*Plan Effective Date*" means November 9, 2009.

aa. "*Released Claims*" shall have the meaning set forth in paragraphs 18 and 19 hereof.

bb. "*Released Parties*" shall refer jointly and severally, individually and collectively to Lear Corporation; the Debtors; Kyungshin-Lear Sales and Engineering, LLC; the present and former direct and indirect parents, owners, subsidiaries, divisions, affiliates, or associates (as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), of any of the foregoing; the present and former officers, directors, employees, agents, attorneys, servants, representatives, non-Defendant stockholders other than Lear, members, managers, and partners of any of the above entities (with respect to any conduct of any of the above entities, except that Furukawa Electric Co., Ltd., American Furukawa, Inc., Furukawa Wiring Systems America, Inc., Lear Furukawa Corporation, Furukawa Lear Corporation, and Furukawa Automotive Systems Inc. are not Released Parties); and the predecessors, heirs, executors, administrators, successors, and assigns of any of the above persons or entities.

cc. "*Releasing Parties*" shall refer jointly and severally, individually and collectively to Dealership Plaintiffs and the Settlement Class Members, as well as each of their past and present officers, directors, members, managers, agents, employees, legal representatives, trustees, parents, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns (and the parents', subsidiaries', and affiliates' past and present officers, directors, agents, employees, legal representatives, trustees, parents, affiliates, heirs, executors, administrators, and purchasers) and officers, directors, agents, employees, legal

8

representatives, trustees, parents, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns of each of the foregoing.

      dd.    "*Settlement Agreement*" means this agreement by and between Lear, KL Sales, and Dealership Plaintiffs, both individually and on behalf of the Settlement Class Members.

      ee.    "*Settlement Amounts*"

      i.  "*Lear Settlement Amount*" means a total, as of the Execution Date, of nine hundred sixty thousand US Dollars ($960,000 USD) comprised of (1) a cash payment of forty thousand, six hundred twenty-three US Dollars ($40,623 USD) and (2) the Bankruptcy Reserve Settlement Proceeds to be paid as set forth in paragraph 7 herein.

      ii.  "*KL Sales Settlement Amount*" means a total of seventy-two thousand US Dollars ($72,000 USD).

      iii.  The Lear Settlement Amount and the KL Sales Settlement Amount shall collectively be referred to as the "Settlement Amounts."

      ff.    "*Settlement Class*" for purposes of this Settlement Agreement only shall mean "all automobile dealers that, during the period January 1, 2000 through the Execution Date: (1) purchased Automotive Wire Harness Systems manufactured by the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator, or (2) purchased vehicles containing Automotive Wire Harness Systems manufactured by the Defendants or any current or former subsidiary, affiliate therof, or co-conspirator." Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries, and affiliates, any co-conspirators, federal government entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Automotive Wire Harness Systems directly from Defendants.

9

gg.    "*Settlement Class Member*" or "*Settlement Class Members*" means, individually or collectively, members of the Settlement Class who do not timely and validly request exclusion from the Settlement Class in accordance with paragraph 9 hereof.

hh.    "*Settlement Fund*" means the collective dollar amount of the Settlement Amounts plus any interest earned thereon after payment thereof by Lear and KL Sales into the Escrow Account.

ii.    "*Settlement Hearing*" means the final approval hearing scheduled by the Court to consider the fairness, adequacy, and reasonableness of the proposed settlement.

2.    <u>Reasonable Best Efforts to Effectuate this Settlement</u>.  Class Plaintiffs' Co-Lead Counsel agree to recommend approval of this settlement by the Court and by Settlement Class Members without qualification or condition not set forth herein.  Class Plaintiffs' Co-Lead Counsel, Settlement Class Members, and counsel for Lear and KL Sales agree to undertake their reasonable best efforts, including, without limitation, all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may become necessary or appropriate by order of the Court or otherwise, to carry out the terms of this Settlement Agreement and to obtain Final Approval of this Settlement Agreement.  The Court's certification of the Settlement Class as provided herein is without prejudice to, or waiver of: (i) the rights of any non-settling Defendant to contest certification of any putative class proposed in the consolidated actions; or (ii) the rights or arguments asserted by any Defendant in defending against such claims.  The Court's findings and rulings in connection with this settlement shall have no effect on the Court's ruling on any motion to certify any class in the Actions or any other action, and no party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any class or with respect to any defense asserted by any Defendant.

3.    <u>Approval by the Bankruptcy Court</u>.    The effectiveness of this Settlement Agreement as to Lear and Lear's obligation to pay the Lear Settlement Amount shall be subject

to and contingent upon the entry of a Final Bankruptcy Order authorizing Lear to distribute the Bankruptcy Reserve Settlement Proceeds to the Escrow Account.  If no such Final Bankruptcy Order is entered as provided in this paragraph, the Settlement Agreement as to Lear shall be immediately and automatically terminated (excepting paragraphs 13, 23, 28, and 29 hereof), with no further action required by the parties, and all proceedings had in connection therewith shall be null and void, without prejudice to the *status quo ante* rights of Dealership Plaintiffs, Settlement Class Members, or Lear, including without limitation for purposes of the Debtors' *Motion for Entry of an Order (A) Enforcing Chapter 11 Plan Discharge and Injunction and (B) Directing Dismissal of Pending Litigation* [Docket No. 1660 - Case No. 09-14326 (ALG)] pending before the Bankruptcy Court and all pleadings and proceedings related thereto.  In that event, all negotiations and proceedings connected with this Settlement Agreement shall be without prejudice to the rights of any party hereto, shall not be deemed or construed to be an admission by any party of any fact or matter, and shall not be used with respect to Lear in any way in the Actions or in any related actions or proceedings, including without limitation, for the avoidance of doubt, in connection with any assertion by the Dealership Plaintiffs, on behalf of themselves or the Settlement Class, of any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors in their voluntary cases pending before the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code, unless Lear and Class Plaintiffs' Co-Lead Counsel agree in writing to proceed with the settlement as and if modified by the Court. Similarly, if a Final Bankruptcy Order is not entered in connection with Lear's settlements or settlement agreements (or any part thereof) with the putative class plaintiffs in the matters captioned *In re Automotive Parts Antitrust Litigation / In re Wire Harness Cases,* Case No. 12-CV-101 ("Direct Purchaser Plaintiffs") and *In re Automotive Parts Antitrust Litigation / In re Wire Harness Cases,* Case No. 12-CV-103 ("End-Payor Plaintiffs"), this Settlement Agreement as to Lear shall be immediately and automatically terminated (excepting paragraphs 13, 23, 28, and 29 hereof), with no further action required by the parties, and all proceedings had in connection therewith shall be null and void, without prejudice to the *status quo ante* rights of

Dealership Plaintiffs, Settlement Class Members, or Lear, including without limitation for purposes of the Debtors' *Motion for Entry of an Order (A) Enforcing Chapter 11 Plan Discharge and Injunction and (B) Directing Dismissal of Pending Litigation* [Docket No. 1660 - Case No. 09-14326 (ALG)] pending before the Bankruptcy Court and all pleadings and proceedings related thereto.  In that event, all negotiations and proceedings connected with this Settlement Agreement shall be without prejudice to the rights of any party hereto, shall not be deemed or construed to be an admission by any party of any fact or matter, and shall not be used with respect to Lear in any way in the Actions or in any related actions or proceedings, including without limitation, for the avoidance of doubt, in connection with any assertion by the Dealership Plaintiffs, on behalf of themselves or the Settlement Class, of any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors in their voluntary cases pending before the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code, unless Lear and Class Plaintiffs' Co-Lead Counsel agree in writing to proceed with the settlement as and if modified by the Court.  If this Settlement Agreement is rescinded, cancelled, or terminated as to Lear in accordance with this paragraph 3, the Escrow Agent shall, within ten (10) business days of termination of the Settlement Agreement, refund (1) the $40,623 cash payment (including any and all income earned thereon) to Lear and (2) the Bankruptcy Reserve Settlement Proceeds (including any and all income earned thereon), less any expenditures (allocated between Lear and KL Sales on a pro rata basis) authorized pursuant to paragraph 13 of this Settlement Agreement that were paid out of the Settlement Fund prior to termination, to Lear for redeposit in the Bankruptcy Reserve.

    4.    <u>Motion for Preliminary Approval</u>.  Within twenty (20) days of the Final Bankruptcy Order as set forth in paragraph 3 hereto, Dealership Plaintiffs shall submit to the Court, in a form mutually agreed upon by counsel for Lear, KL Sales, and Class Plaintiffs' Co-Lead Counsel, a motion for preliminary approval of the settlement contemplated by this Settlement Agreement and for a stay of all proceedings in the Actions against Lear and KL Sales until the Court renders a final decision regarding the approval of the settlement and, if it

approves the settlement, enters the final judgment.  The Motion shall include the proposed form of order preliminarily approving this settlement substantially in the form of **Exhibit B** hereto that shall be provided to and agreed to by Lear and KL Sales.  Lear and KL Sales shall not unreasonably withhold their agreement to the Motion and proposed form of order preliminarily approving this settlement.  If no Final Bankruptcy Order is entered as provided in paragraph 3, the Motion contemplated by this paragraph 4 shall be limited to KL Sales and shall be filed within twenty (20) days of the entry of an order by the Bankruptcy Court denying Lear's request for issuance of the Final Bankruptcy Order.

5.     <u>Notice to Settlement Class</u>.  In the event that the Court preliminarily approves the settlement, Class Plaintiffs' Co-Lead Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Court's Order, provide each Settlement Class Member who can be identified by reasonable means with notice in a reasonable manner as approved by the Court, the proposed plan of distribution of the settlement proceeds among the Settlement Class Members, and the date of the Settlement Hearing.  In order to mitigate the costs of notice, Dealership Plaintiffs shall endeavor, if practicable, to disseminate notice of this settlement with notice of any other settlements that are reached with any other Defendant.  Prior to providing notice pursuant to this paragraph, Dealership Plaintiffs shall submit to the Court within a reasonable period of time following preliminary approval, as determined in good faith by Class Plaintiffs' Co-Lead Counsel, consistent with the parties' goal of obtaining Final Approval of this settlement, a motion, subject to review by Lear and KL Sales and consistent with the content of this Settlement Agreement, for authorization to disseminate notice of the settlement to all Settlement Class Members (the "Notice Motion").  The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice.  Dealership Plaintiffs shall take all necessary and appropriate steps to ensure that notice is provided in accordance with the order of the Court.  In addition:

a.  Lear and KL Sales agree to permit a maximum of one hundred twenty-five thousand US dollars ($125,000 USD) of the Settlement Fund to be used towards

Notice Costs. Funds expended pursuant to this paragraph may be paid without further approval from the Court and, in accordance with the provisions of paragraph 13, any amounts expended for Notice Costs are not recoverable if this settlement does not become final or is terminated.

b. In no event shall Lear and/or KL Sales be responsible for giving notice of this settlement to members of the Settlement Class or for the administration of the Settlement Fund, including but not limited to the expense and cost of such notice and claims administration, except insofar as provided in this Settlement Agreement.

c. If and to the extent a claims administrator is selected to administer any distribution from the Settlement Fund, that claims administrator shall determine through an audit process of claims filed that claimants qualify as Settlement Class Members.

6. <u>Motion for Entry of Final Judgment</u>. Dealership Plaintiffs shall submit, in a form mutually agreed upon by counsel for Lear, KL Sales, and Class Plaintiffs' Co-Lead Counsel, a motion for final approval of the settlement by the Court, after notice to the members of the Settlement Class of the Settlement Hearing, and shall seek entry of an order and final judgment, which shall be provided in advance to and agreed to by Lear and KL Sales:

a. certifying the Settlement Class described in paragraph 1.ff., pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as a settlement class;

b. fully and finally approving the settlement contemplated by this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms and conditions;

c. directing that the Actions be dismissed with prejudice as to Lear and KL Sales, and, except as provided for herein, without costs;

14

    d.   discharging and releasing the Released Parties from all Released Claims;

    e.   reserving continuing and exclusive jurisdiction over the settlement, including its administration; and

    f.   determining pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal of the Actions as to Lear and KL Sales shall be final and appealable.

Lear and KL Sales shall not unreasonably withhold their agreement to the motion for final approval of the settlement and the proposed order of final judgment.

    7.   <u>Settlement Consideration and Payment</u>.  As soon as reasonably practicable but in no event later than five (5) business days after the Execution Date, and in full, complete, and final settlement of the Actions as provided herein, Lear shall cause the Lear Settlement Amount and KL Sales shall cause the KL Sales Settlement Amount to be deposited into the Escrow Account as follows:

    a.   **Cash Payment.**  Lear shall deposit forty thousand, six hundred twenty-three US Dollars ($40,623 USD) into the Escrow Account (the "Cash Payment").  KL Sales shall deposit the full amount of the KL Sales Settlement Amount into the Escrow Account.  In the event that the foregoing deadline falls on a Saturday, Sunday, or U.S. bank holiday, the deadline will be extended to the next business day.  The payments shall be made by wire transfer in immediately available funds.

    b.   **Proceeds of Bankruptcy Claim.**  Except as provided to the contrary in paragraph 3, the Settlement Class shall have, without the need to file a proof of claim against Lear in the Bankruptcy Court or seek to have any claim allowed on a class basis, a prepetition claim (which will be deemed an Allowed Other General Unsecured Claim (as defined in the Plan) in that class of claims designated in the Plan as Class 5A), in an amount such that, upon distribution on account of such claim in accordance with this Settlement Agreement, the Settlement Class shall receive the Bankruptcy Reserve Settlement Proceeds; *provided* that, for the avoidance of

doubt and without limiting the generality of paragraph 3 above, if a Final Bankruptcy Order is not entered, the Settlement Class shall have no such claim, nor right to assert such claim absent entry of a Final Order authorizing it to do so. On account of such claim, Lear shall cause a distribution of the Bankruptcy Reserve Settlement Proceeds to be deposited into the Escrow Account. For the avoidance of doubt, neither the Dealership Plaintiffs nor the Settlement Class Members, nor anyone acting on their behalf, shall receive, in connection with this distribution or otherwise, any additional escrow CUSIP with respect to or right to any future distributions out of the Bankruptcy Reserve.

8.  <u>Net Lear Settlement Amount</u>.  The Dealership Plaintiffs shall cause the liquidation of the New Common Stock and Other General Unsecured Claims Warrants deposited by Lear into the Escrow Account ("Stock and Warrants"), which shall be at least equal to the Bankruptcy Reserve Settlement Proceeds, to occur as promptly as practicable upon distribution into the Escrow Account.  If, following such liquidation the value of the liquidated Stocks and Warrants plus the Cash Payment is less than the Lear Settlement Amount plus any reasonable out-of-pocket costs and capital gains tax in liquidating the Stocks and Warrants, then Lear shall cause additional New Common Stock and Other General Unsecured Claims Warrants from the Bankruptcy Reserve or an additional Cash Payment, at Lear's sole discretion, to be distributed to the Escrow Account (and Dealership Plaintiffs immediately will liquidate, if necessary, such proceeds upon receipt) until the aggregate value of the liquidated Stocks and Warrants plus Cash Payment equals the Lear Settlement Amount plus the reasonable out-of-pocket costs and capital gains tax in liquidating the Stocks and Warrants.  If, on the other hand, the value of the liquidated Stocks and Warrants plus the Cash Payment is greater than the Lear Settlement Amount plus any reasonable out-of-pocket costs and capital gains tax in liquidating the Stocks and Warrants then the Dealership Plaintiffs shall cause the Escrow Agent to pay to Lear, in cash, the amount of such excess as soon as practicable following the Liquidation Date.  The parties agree that the agreement establishing and governing administration of the Escrow Account shall

provide that, for the avoidance of doubt, subsequent to transfer to the Dealership Plaintiffs from the Escrow Account of the Settlement Fund, the Dealership Plaintiffs shall transfer to Lear any amounts remaining in the Escrow Account net of any reasonable out-of-pocket costs and capital gains tax in liquidating the Stocks and Warrants.

9.      Exclusions.  Any person or entity seeking exclusion from the Settlement Class must file a timely written request for exclusion.  Any person or entity that files such a request shall be excluded from the Settlement Class and shall have no rights with respect to this settlement.  A request for exclusion that does not comply with all of the provisions set forth in the class notice, including but not limited to not containing all of the requested information, not bearing the proper signature, being sent to an address other than the one designated, or not being sent within the time specified, will, subject to the Court's review, be invalid, and the person(s) or entity serving such an invalid request shall be deemed Settlement Class Member(s) and shall be bound by this Settlement Agreement upon Final Approval.  The request must be mailed to Class Plaintiffs' Co-Lead Counsel, counsel for Lear, and counsel for KL Sales at the addresses provided in the class notice, and postmarked no later than sixty (60) days after the date on which written notice of this settlement is first given to the Settlement Class or any other date set by the Court.  Class Plaintiffs' Co-Lead Counsel, counsel for Lear, and counsel for KL Sales shall promptly forward to each other complete copies of all requests for exclusion, as they are received.  To the extent a claims administrator is retained to administer any distribution of the Settlement Fund, Class Plaintiffs' Co-Lead Counsel are responsible for promptly providing such claims administrator with copies of any requests for exclusion received pursuant to this paragraph.  Further, Class Plaintiffs' Co-Lead Counsel shall, within ten (10) business days after the Court-ordered deadline for timely requests for exclusion from the Settlement Class, cause to be provided to counsel for Lear and counsel for KL Sales a list of those Settlement Class members who have timely excluded themselves from the Settlement Class.  With respect to any potential Settlement Class member who validly requests exclusion from the Settlement Class, Lear and KL Sales reserve all of their legal rights and defenses, including but not limited to any

17

defenses relating to whether the excluded Settlement Class member is an indirect purchaser of Automotive Wire Harness Systems and/or has standing to bring any claim against Lear or KL Sales.  Within twenty (20) business days following the deadline for the submission of requests for exclusion from the Settlement Class in accordance with the terms of this paragraph, or as soon thereafter as practicable, the parties shall determine the total number of automobile dealers in the Indirect Purchaser States from January 1, 2000 through the Execution Date that:  (1) purchased Automotive Wire Harness Systems manufactured by one of the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator identified to counsel for Lear and KL Sales by Class Plaintiffs' Co-Lead Counsel, or (2) purchased vehicles containing automotive Wire Harness Systems manufactured by one of the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator identified to counsel for Lear and KL Sales by Class Plaintiffs' Co-Lead Counsel (defined as "Total Number of Damages Class Members" for purposes of calculating the Total Opt-Out Percentage defined below).  The parties shall determine the Total Number of Damages Class Members based upon reasonably available public information and each dealership location shall be counted as a separate Settlement Class member for purposes of this calculation.   In the event that the parties mutually agree that non-public information is required to determine the Total Number of Damages Class Members, the parties shall identify an appropropriate source of, and Lear shall pay for, the reasonable costs incurred in securing the necessary information. Within ten (10) business days following the determination of the Total Number of Damages Class Members, the parties shall calculate the percentage of United States dealer locations in the Indirect Purchaser States that are owned or controlled by Settlement Class members in the Indirect Purchaser States that have validly and timely requested to be excluded from the Settlement Class (the "Total Opt-Out Percentage"), provided that Lear and KL Sales, respectively, shall have the sole option to waive the calculation and, by doing so, waive its termination rights under this paragraph. Locations represented by any non-putative class plaintiffs that have filed a complaint against any other defendant(s) in the Actions involving the allegations at issue in the Actions, are not considered opt-outs.  The Total

Opt-Out Percentage is a fraction, the numerator of which is the Total Number of Damages Class Members that have validly and timely requested to be excluded from the Settlement Class, and the denominator of which is the Total Number of Damages Class Members.  In the event that the Total Opt-Out Percentage exceeds the percentage set forth in a separate confidential side letter agreement, Lear and KL Sales shall each, at their sole discretion, have the option to rescind, cancel, and terminate this Settlement Agreement (excepting paragraphs 13, 23, 28, and 29 hereof) as with respect to them; *provided*, *however*, that (i) these termination rights shall be exercised within five (5) business days of the receipt of Total Opt-Out Percentage calculation or be deemed waived and (ii) the party exercising their termination rights shall have the burden of demonstrating that the Total Opt-Out Percentage has been met.  Lear and KL Sales' respective termination rights regarding the Dealership Plaintiffs, members of the Settlement Class, and the Total Opt-Out Percentage are fully set forth in the confidential side letter.  If either Lear or KL Sales elects to rescind, cancel, and/or terminate this Settlement Agreement in accordance with this paragraph 9 (the "Terminating Party") as it relates to each of them, the Escrow Agent shall, within ten (10) business days of termination of the Settlement Agreement with respect to the Terminating Party, refund to the Terminating Party the portion of the Settlement Fund (including any and all income earned thereon) paid by the Terminating Party, less only any taxes paid or owed on the earnings of the Settlement Fund, any reasonable out-of-pocket costs and capital gains tax in liquidating the Stocks and Warrants, and any Notice Costs or other expenditures authorized by this Settlement Agreement that were paid out of the Settlement Fund prior to termination.  The parties expressly reserve all of their rights if the settlement does not become final in accordance with the terms of this Settlement Agreement or if it is rescinded or terminated by Lear and/or KL Sales pursuant to this paragraph.   Specifically, all negotiations and proceedings connected with this Settlement Agreement shall be without prejudice to the rights of any party hereto, including without limitation, specifically, the *status quo ante* rights of Dealership Plaintiffs, Settlement Class Members, Lear, or KL Sales, including without limitation for purposes of the Debtors' *Motion for Entry of an Order (A) Enforcing Chapter 11 Plan*

*Discharge and Injunction and (B) Directing Dismissal of Pending Litigation* [Docket No. 1660 - Case No. 09-14326 (ALG)] pending before the Bankruptcy Court and all pleadings and proceedings related thereto, shall not be deemed or construed to be an admission by any party of any fact or matter, and shall not be used with respect to any party as to which this Settlement Agreement has been terminated in any way in the Actions or in any related actions or proceedings, including without limitation, for the avoidance of doubt, in connection with any assertion by the Dealership Plaintiffs, on behalf of themselves or the Settlement Class, of any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors in their voluntary cases pending before the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code, unless the respective parties agree in writing to proceed with the settlement as and if modified by the Court.

10.     <u>Investment of Settlement Fund</u>.  All payments into the Escrow Account shall, when made, be invested in United States Government Treasury obligations or United States Treasury money market funds; *provided*, *however*, that such portions of the Settlement Fund as may reasonably be needed to pay current expenses associated with providing notice to the Settlement Class pursuant to paragraph 5 hereof, and any other amounts approved by the Court following Final Approval, may be deposited in a federally insured interest-bearing bank account. Any interest earned on any of the foregoing shall become part of the Settlement Fund.  Neither Lear nor KL Sales shall have any responsibility for, or liability in connection with, the Settlement Fund, including, without limitation, the investment, administration, maintenance or distribution thereof.

11.     <u>Custody of the Court</u>.  All funds held in the Escrow Account shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Settlement Agreement and/or further order(s) of the Court.

12.     <u>Qualified Settlement Fund</u>.  The Escrow Account is intended by the parties hereto to be treated as a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1, and

to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.  At the request of Lear and/or KL Sales, a "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Escrow Account to be treated as a qualified settlement fund from the earliest date possible, and the Escrow Agent shall take all actions as may be necessary or appropriate to this end.   At the direction of Class Plaintiffs' Co-Lead Counsel and with notification to Lear's and KL Sales' counsel, the Escrow Agent shall pay taxes or estimated taxes on any income earned on the funds in the Escrow Account and all related costs and expenses from the Escrow Account, whether or not Final Approval has occurred.  In the event federal or state income tax liability is finally assessed against and paid by Lear or KL Sales as a result of any income earned on the funds in the Escrow Account, Lear and KL Sales shall be entitled to their respective pro rata reimbursement of such payment from the funds in the Escrow Account, after approval of the Court and whether or not Final Approval has occurred.  Lear and KL Sales will use reasonable efforts to resist any such assessment or payment.  Except as set forth in this paragraph, neither Lear nor KL Sales shall have any responsibility to make any tax filings related to the Settlement Fund or to pay any taxes with respect thereto.

13.   <u>Payments of Costs From the Settlement Fund</u>.  Reasonable disbursements for expenses associated with providing Notice of the settlement to the Settlement Class pursuant to paragraph 5 hereof, any reasonable out-of-pocket costs in liquidating the Stocks and Warrants, and expenses incurred in connection with taxation matters pursuant to paragraphs 8, 12 and 21 hereof, may be paid without approval from the Court and shall not be refundable to Lear or KL Sales in the event the Agreement is disapproved, rescinded, or otherwise fails to become effective.  No other disbursement from or distribution of the Settlement Fund shall be made without prior approval of the Court.  Neither Lear nor KL Sales shall have any responsibility for, or liability in connection with, the Settlement Fund, including, without limitation the investment, administration, maintenance, or distribution thereof.

14.    All Claims Satisfied by Settlement Fund.  Each Settlement Class Member shall look solely to the Settlement Fund and/or other relief expressly provided in this Settlement Agreement for settlement and satisfaction, as provided herein, of all claims released by the Settlement Class pursuant to paragraphs 18 and 19 hereof.  Except as provided by order of the Court pursuant to this Settlement Agreement, no Settlement Class Member shall have any interest in the Settlement Fund or any portion thereof.

15.    All Expenses Paid from Settlement Fund.  Neither Lear nor KL Sales shall be liable for any of the costs or expenses of the litigation of the Actions or of this settlement, including but not limited to those (a) of any of the Dealership Plaintiffs' or Settlement Class Members' counsel, experts, consultants, agents, and representatives; (b) incurred in giving notice (except insofar as provided in paragraph 5 hereof); or (c) incurred in administering the settlement or distributing the Settlement Funds.

16.    Attorneys' Fees, Reimbursement of Costs and Expenses, and Incentive Awards for Class Representatives.

(a)    Class Plaintiffs' Co-Lead Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees; (ii) reimbursement of costs and expenses incurred in connection with prosecuting the Actions and incentive awards, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"); and (iii) incentive awards for the Dealership Plaintiffs. Class Plaintiffs' Co-Lead Counsel reserve the right to make additional applications for fees and expenses incurred and reasonable incentive awards.  In no event shall the Released Parties be responsible to pay any such fees, expenses, costs, or incentive awards except to the extent they are paid out of the Settlement Fund.

(b)    Subject to Court approval, Dealership Plaintiffs and Class Plaintiffs' Co-Lead Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses, including but not limited to attorneys' fees and past, current, or future litigation expenses, and

incentive awards.  There shall be no payment of attorneys' fees, costs, or expenses of Plaintiffs' Counsel, or any other award the Court may make, including but not limited to incentive awards for the Dealership Plaintiffs, out of the Settlement Fund until after the Court enters an order finally approving the settlement and awarding such payment.

(c)  In the event the settlement is reversed on appeal or the awards of attorneys' fees and reimbursement of costs are reduced on appeal, Class Plaintiffs' Co-Lead Counsel shall, within ten (10) business days from receiving notice of the applicable court order, refund to the Settlement Fund the fees, expenses, and costs paid from the Settlement Fund plus interest thereon at the same rate(s) as earned on the Settlement Fund in an amount consistent with such reversal or modification.

(d)  Lear and KL Sales agree to take no position with respect to any application to the Court by Class Plaintiffs' Co-Lead Counsel for an award of attorneys' fees, reimbursement of costs and expenses incurred in the prosecution of these Actions, and incentive awards for the Dealership Plaintiffs, *provided* that the application is made in accordance with this Settlement Agreement.

(e)  The procedures for and the allowance or disallowance by the Court of the application by Class Plaintiffs' Co-Lead Counsel for attorneys' fees, costs, and expenses to be paid out of the Settlement Fund are not part of this Settlement Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement.  Any order or proceeding relating to the Fee and Expense Application or any appeal from any such order shall not operate to terminate or cancel this Settlement Agreement, affect or delay the finality of the judgment approving settlement, or affect or delay the payment of the Fee and Expense Award as provided in paragraph 16(a) above.

(f)  Neither Settling Defendants nor any other of the Released Parties shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Plaintiffs' Counsel of any Fee and Expense Award in the Actions.

(g)     Neither Settling Defendants nor any other of the Released Parties shall have any responsibility for, or interest in, or liability whatsoever with respect to allocation among Plaintiffs' Counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Actions.

17.     <u>Plan of Distribution and Proof of Claim</u>.  Unless otherwise ordered by the Court, the Settlement Fund shall be distributed to Settlement Class Members in accordance with a plan of distribution to be submitted to and approved by the Court.  Any proof of claim form that may be used in connection with the distribution of the Settlement Fund to Settlement Class Members shall be provided in advance for consultation with counsel for Lear and KL Sales, and thereafter shall be submitted to and approved by the Court.

18.     <u>Releases</u>.  In addition to the effect of any final judgment entered in accordance with this Settlement Agreement, in the event that this settlement is approved by the Court the Released Parties shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including without limitation costs, penalties, and attorneys' fees, known or unknown, suspected or unsuspected, asserted or unasserted, in law or equity, that any of the Releasing Parties, or any one of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, could have, or hereafter can, shall, or may have, relating in any way to any conduct related to, arising from, or described in the Actions prior to the Effective Date on account of, arising out of, resulting from, or related to in any respect the purchase, sale, pricing, discounting, manufacturing, offering, or distributing of Automotive Wire Harness Systems or relating, in any way, to any conduct alleged in the Actions including, without limitation, any such claims which have been asserted or could have been asserted in the Actions, or any one of them, against the Released Parties including, but not limited to, claims arising under federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, or civil conspiracy law, including without limitation the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*

However, the Released Claims do not include: (1) claims based on direct purchases of Automotive Wire Harness Systems; (2) claims made by end-payors that are indirect purchasers of Automotive Wire Harness Systems; (3) claims based on negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defects, or breach of product warranty, or breach of contract claims relating to Automotive Wire Harness Systems; (4) claims concerning any automotive part other than Automotive Wire Harness Systems; (5) claims made by any State as to government purchases and/or penalties; (6) claims for damages under the state or local laws of any jurisdiction in the United States other than the Indirect Purchaser States; and (7) claims brought outside the United States under laws other than those of the United States relating to purchases of Automotive Wire Harness Systems outside the United States.   The Releasing Parties covenant and agree that they, and each of them, will forever refrain from instituting, maintaining, prosecuting, or continuing to maintain or prosecute any suit or action, or collecting from, seeking to recover from, or proceeding against the Released Parties in connection with any of the Released Claims.   Dealership Plaintiffs and their counsel acknowledge that Lear and KL Sales consider it to be a material term of this Settlement Agreement that all Settlement Class Members will be bound by the provisions of this paragraph 18; *provided*, *however*, that should there be a breach of this covenant not to sue by any Settlement Class Member other than Dealership Plaintiffs, or any one of them, Dealership Plaintiffs and Class Plaintiffs' Co-Lead Counsel shall fully cooperate with Lear and KL Sales in seeking the dismissal of any such claim or action.   Claimants on the Settlement Fund shall execute a release of the Released Parties as a condition precedent to receipt of any part of the Settlement Fund, but the failure of any claimant to execute such a release shall not in any way affect the validity of the release provided in this paragraph 18, and they shall nonetheless be bound by the terms of such release.  Class Plaintiffs' Co-Lead Counsel shall provide counsel for Lear and KL Sales with copies of the releases referred to in this paragraph.

19.   <u>Waiver of Rights</u>.  In addition to the provisions of paragraph 18, each Settlement Class Member hereby expressly agrees that, upon Final Approval, it will waive and release with

respect to the Released Claims that such Settlement Class Member has released pursuant to paragraph 18 hereof any and all provisions, rights, and benefits conferred either (a) by § 1542 of the California Civil Code, which reads:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor,

(b) by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, or (c) any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth in paragraph 18 hereof.  Each Settlement Class Member may hereafter discover facts other than or different from those that it knows or believes to be true with respect to the subject matter of the Released Claims that such Settlement Class Member has released pursuant to paragraph 18 hereof, but each Settlement Class Member hereby expressly agrees that, upon Final Approval, it shall have waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the Released Claims that such Settlement Class Member has released pursuant to paragraph 18 hereof, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  The release of unknown, unanticipated, and unsuspected losses or claims is contractual, and not a mere recital.

20.    <u>Effect of Disapproval</u>.  If the Court refuses, preliminarily or otherwise, to approve the settlement or this Settlement Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in paragraph 6 hereof, or if the Court enters the final judgment and appellate review is sought and, on such review, such final judgment is not affirmed in its entirety, Lear, KL Sales, and Class Plaintiffs Co-Lead Counsel shall, at their sole discretion, each have the option to rescind, cancel, and terminate this Settlement Agreement (excepting paragraphs 13, 23, 28, and 29 hereof) as it relates to each of them.  Similarly, if the Court refuses to preliminarily approve Lear's

settlements or settlement agreements (or any part thereof) with the Direct Purchaser Plaintiffs and the End-Payor Plaintiffs, and KL Sales' settlements or settlement agreements (or any part thereof) with the End-Payor Plaintiffs, Lear and KL Sales shall, at their sole discretion, have the option to rescind, cancel, and terminate this Settlement Agreement (excepting paragraphs 13, 23, 28, and 29 hereof) as it relates to each of them. If any of Lear, KL Sales, or Class Plaintiffs' Co-Lead Counsel elect to rescind, cancel, and/or terminate this Settlement Agreement in accordance with this paragraph 20, the Escrow Agent shall, within ten (10) business days of termination of the Settlement Agreement, (i) if terminated by Class Plaintiffs' Co-Lead Counsel, refund (a) the $40,623 Cash Payment (including any and all income earned thereon) to Lear; (b) the Bankruptcy Reserve Settlement Proceeds (including any and all income earned thereon) to Lear for redeposit in the Bankruptcy Reserve; and (c) the KL Sales Settlement Amount (including any and all income earned thereon) to KL Sales, less any expenditures (allocated between Lear and KL Sales on a pro rata basis) authorized pursuant to paragraph 13 of this Settlement Agreement that were paid out of the Settlement Fund prior to termination; (ii) if terminated by Lear, refund (1) the $40,623 Cash Payment (including any and all income earned thereon) to Lear and (2) the Bankruptcy Reserve Settlement Proceeds (including any and all income earned thereon), less any expenditures (allocated between Lear and KL Sales on a pro rata basis) authorized pursuant to paragraph 13 of this Settlement Agreement that were paid out of the Settlement Fund prior to termination, to Lear for redeposit in the Bankruptcy Reserve; and (iii) if terminated by KL Sales, refund the KL Sales Settlement Amount (including any and all income earned thereon) to KL Sales, less any expenditures (allocated between Lear and KL Sales on a pro rata basis) authorized pursuant to paragraph 13 of this Settlement Agreement that were paid out of the Settlement Fund prior to termination. The parties expressly reserve all of their rights if the settlement does not become final in accordance with the terms of this Settlement Agreement or if it is rescinded or terminated by Lear, KL Sales, or Class Plaintiffs' Co-Lead Counsel pursuant to this paragraph, including but not limited to the *status quo ante* rights of Dealership Plaintiffs, Settlement Class Members, Lear, or KL Sales, including without limitation for purposes of the Debtors' *Motion*

*for Entry of an Order (A) Enforcing Chapter 11 Plan Discharge and Injunction and (B) Directing Dismissal of Pending Litigation* [Docket No. 1660 - Case No. 09-14326 (ALG)] pending before the Bankruptcy Court and all pleadings and proceedings related thereto. Specifically, all negotiations and proceedings connected with this Settlement Agreement shall be without prejudice to the rights of any party hereto, shall not be deemed or construed to be an admission by any party of any fact or matter, and shall not be used with respect to the party or parties for which this Settlement Agreement has been rescinded, terminated, or otherwise does not become final in any way in the Actions or in any related actions or proceedings, including without limitation, for the avoidance of doubt, in connection with any assertion by the Dealership Plaintiffs, on behalf of themselves or the Settlement Class, of any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors in their voluntary cases pending before the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code, unless the undersigned parties agree in writing to proceed with the settlement as and if modified by the Court.

Notwithstanding the foregoing, any modification or reversal on appeal of any award of attorneys' fees or expenses or of any plan of allocation of settlement proceeds among Settlement Class Members in the Actions shall not be deemed a modification of this Settlement Agreement or of a final judgment in these Actions. To the extent that any award of attorneys' fees or expenses is modified or reversed on appeal, the balance shall be returned to the Settlement Fund within thirty (30) days of such modification or reversal becoming final and not subject to further appellate review.

21. <u>Taxes and Tax Expenses</u>. Class Plaintiffs' Co-Lead Counsel or their designee shall be solely responsible for filing all informational and other tax returns necessary to report any taxable income earned by the Settlement Fund and shall file all informational and other tax returns necessary to report any income earned by the Settlement Fund and pay any estimated or actual taxes due thereon out of the Settlement Fund, as and when legally required, including interest and penalties due on income earned by the Settlement Fund. Class Plaintiffs' Co-Lead

Counsel shall be entitled to pay customary and reasonable tax expenses, including without limitation professional fees and expenses incurred in connection with carrying out their responsibilities set forth in this paragraph from the Settlement Fund, when incurred and upon written notice to the Escrow Agent without prior approval by the Court.  Except as set forth in paragraph 12 hereof, neither Lear nor KL Sales shall have any responsibility to make any tax filings related to this Settlement Agreement or the Settlement Fund or to pay any taxes with respect thereto.

      22.   <u>Cooperation</u>.

      i.   <u>Lear's Cooperation</u>.  In addition to its payment of the Lear Settlement Amount set forth in paragraph 7 hereof, Lear's obligations, as set forth below, shall be limited to: (a) the production of transactional sales data, which shall be compiled and produced in the form in which it is kept in the ordinary course of Lear's business, reflecting Lear's sales of Automotive Wire Harness Systems sold directly in the United States, to the extent such data exists and to the extent it is reasonably accessible and is reasonably available in Lear's records for the period January 1, 1998 to December 31, 2013; (b) the production of transactional cost data, which shall be compiled and produced in the form in which it is kept in the ordinary course of Lear's business, for the production and sale of Automotive Wire Harness Systems in the United States to the extent such data exists and to the extent it is reasonably accessible and is reasonably available in Lear's records for the period January 1, 1998 to December 31, 2013; (c) reasonable assistance by Lear to Dealership Plaintiffs in understanding the transactional sales and cost data produced by Lear, including a reasonable number of written and/or telephonic communications with plaintiffs' experts and between technical personnel; (d) the production of Documents within the files of the Lear individuals identified in Lear's Rule 26(a)(1) Initial Disclosures, served August 1, 2012 sent to or received from any employees of Furukawa Lear Corporation (later known as Lear Furukawa Corporation), which was a separately incorporated joint venture owned by Lear ESD Joint Venture Holdings LLC f/k/a Lear Corporation EEDS and Interiors and Furukawa Automotive Systems Inc. and Furukawa Electric Co., Ltd., during the period January

1, 2000 to February 28, 2010, to the extent such Documents exist, are relevant to the claims and/or defenses in the Actions, and are within Lear's possession, custody, and control and to the extent such Documents are readily and reasonably available in Lear's records; (e) the production of Documents within the files of the Lear individuals identified in Lear's Rule 26(a)(1) Initial Disclosures, served August 1, 2012 sent to or received from any employees of Kyungshin-Lear during the period January 1, 2000 to February 28, 2010, to the extent such Documents exist, are relevant to the claims and/or defenses in the Actions, are within Lear's possession, custody, and control, and to the extent such documents are reasonably available in Lear's records; (f) the authentication of any Documents referenced in subparts (a) through (e) of this paragraph that Dealership Plaintiffs notify Lear they intend to use on summary judgment, class certification, or trial, to the extent that they properly are subject to authentication by Lear; and (g) one presentment of one or two witnesses, to be identified by Lear, upon a single date to be coordinated at Lear's discretion with counsel for End-Payor Plaintiffs and Direct Purchaser Plaintiffs, who can generally describe (1) the United States marketplace for Automotive Wire Harness Systems, (2) Lear's sales of such products, (3) Lear's participation in the separately incorporated Kyungshin-Lear joint venture, and (4) Lear's participation in the separately incorporated joint venture owned by Lear ESD Joint Venture Holdings LLC f/k/a Lear Corporation EEDS and Interiors and Furukawa Automotive Systems Inc. and Furukawa Electric Co., Ltd. Lear shall use its best efforts to coordinate its presentment of witnesses pursuant to this paragraph 22(i)(g) with KL Sales presentment of witnesses pursuant to Paragraph 23(ii)(f). In addition, notwithstanding that Lear does not believe it has any transactional data relating to Furukawa Lear Corporation (later known as Lear Furukawa Corporation) within its possession, custody or control, Lear will provide, to the extent such information is reasonably known to it, reasonable assistance to Dealership Plaintiffs in understanding the transactional sales and cost data produced by Furukawa Lear Corporation including a reasonable number of written and/or telephonic communications with plaintiffs' experts and between technical personnel. Unless otherwise agreed to by Lear and Dealership Plaintiffs, Lear shall complete its obligations

pursuant to subpart (g) of this paragraph 22(i) within three (3) months of entry of preliminary approval of this settlement.  Lear shall use its best efforts to substantially complete its obligations pursuant to subparts (a), (b), (d), and (e) of this paragraph 22(i) within three (3) months of entry of preliminary approval of this settlement, as set forth more fully in a confidential side letter agreement, and shall make available the reasonable assistance required by subpart (c) and satisfy its obligations with respect to Furukawa Lear Corporation's transactional data upon production of that transactional data by the successor to Furukawa Lear Corporation or its designee.

ii.        KL Sales' Cooperation.  In addition to its payment of the KL Sales Settlement Amount set forth in paragraph 7 hereof, KL Sales' obligations, as set forth below, shall be limited to: (a) the production of transactional sales data, which shall be compiled and produced in the form in which it is kept in the ordinary course of KL Sales' business, reflecting KL Sales' sales of Automotive Wire Harness Systems sold directly in the United States, to the extent such data exists and to the extent it is reasonably accessible and is reasonably available in KL Sales' records for the period January 1, 1998 to December 31, 2013; (b) the production of transactional cost data, which shall be compiled and produced in the form in which it is kept in the ordinary course of KL Sales' business, for the production and sale of Automotive Wire Harness Systems in the United States to the extent such data exists and to the extent it is reasonably accessible and is reasonably available in KL Sales' records for the period January 1, 1998 to December 31, 2013; (c) reasonable assistance by KL Sales to Dealership Plaintiffs in understanding the transactional sales and cost data produced by KL Sales, including a reasonable number of written and/or telephonic communications with plaintiffs' experts and between technical personnel; (d) the production of Documents within the files of the KL Sales individuals identified in KL Sales' Rule 26(a)(1) Initial Disclosures served August 1, 2012, as having information regarding sales and pricing of relevant products, sent to or received from any employees of  Lear not working for KL Sales during the period January 1, 2000 to February 28, 2010, to the extent such Documents exist, are relevant to the claims and/or defenses in the Actions, are within KL Sales' possession, custody, and control, and to the extent such documents are reasonably available in KL Sales'

31

records; (e) the authentication of any Documents referenced in subparts (a) through (d) of this paragraph that Dealership Plaintiffs notify KL Sales they intend to use on summary judgment, class certification, or trial, to the extent that they properly are subject to authentication by KL Sales; and (f) one presentment of one or two witnesses, to be identified by KL Sales, upon a single date to be coordinated at KL Sales' discretion with counsel for End-Payor Plaintiffs, who can generally describe (1) the United States marketplace for Automotive Wire Harness Systems, (2) KL Sales' sales of such products, and (3) the separately incorporated KL Sales joint venture. Unless otherwise agreed to by KL Sales and Dealership Plaintiffs, KL Sales shall complete its obligations pursuant to subpart (f) of this paragraph 22(ii) within three (3) months of entry of preliminary approval of this settlement.   KL Sales shall use its best efforts to substantially complete its obligations pursuant to subparts (a), (b), and (d) of this paragraph 22(ii) within three (3) months of entry of preliminary approval of this settlement, as set forth more fully in a confidential side letter agreement.

iii.      In making any production contemplated by paragraph 22, Lear and KL Sales are entitled to withhold from production any Documents protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, applicable privacy laws, or any other applicable privilege, doctrine, or law.  In doing so, neither Lear nor KL Sales is required to create a privilege log or otherwise provide Dealership Plaintiffs with identifying information regarding the Documents withheld.  To the extent any of Lear's or KL Sales' cooperation obligations pursuant to paragraph 22(i)(g) or 22(ii)(f) require any current or former Lear or KL Sales employee to travel from their principal place of business to another location, Class Plaintiffs' Co-Lead Counsel shall reimburse Lear or KL Sales, respectively, for half of the reasonable travel expenses incurred by any such person in connection with fulfilling Lear's or KL Sales' cooperation obligations, but in no event shall Class Plaintiffs' Co-Lead Counsel be responsible for reimbursing such persons for time or services rendered.  Such travel expenses may include economy airfare, but not airfare for business or first class seats.  Expenses reimbursable by Class Plaintiffs' Co-Lead Counsel shall not exceed $750 per U.S.-based

employee, per trip or $1,500 per non-U.S.-based employee, per trip.  All Documents and other information provided pursuant to this Settlement Agreement will be deemed "Highly Confidential – Outside Attorneys Only," as said designation is described in the Protective Order in this Action (Dkt. 200), and subject to the Protective Order entered in the Action as if they had been produced in response to discovery requests and so designated.  For the avoidance of doubt, Dealership Plaintiffs expressly agree that they will not seek any discovery from Lear, KL Sales, or the Released Parties in the Actions after the Execution Date including but not limited to written discovery, document discovery, or deposition discovery.   Lear's and KL Sales' obligations pursuant to this paragraph 22 shall not be affected by the Release set forth in paragraphs 18 and 19 of this Settlement Agreement.  Unless this Settlement Agreement is rescinded, disapproved, or otherwise fails to take effect, Lear's and KL Sales' respective obligations to provide Cooperation under this Settlement Agreement shall cease whenever ordered by the Court or on the date that final judgment has been entered in the Action against all Defendants, whichever comes first.  In the event that this settlement fails to receive approval by the Court, or in the event that it is terminated by any party under any provision herein, the parties agree that neither Dealership Plaintiffs nor Class Plaintiffs' Co-Lead Counsel shall be permitted to introduce into evidence against Lear or KL Sales, at any hearing or trial, or in support of any motion, opposition, or other pleading in the Actions or in any other federal or state or foreign action alleging a violation of any law relating to the subject matter of the Actions, any deposition testimony or any documents provided by Lear, KL Sales, and/or the Released Parties, their counsel, or any individual made available by Lear pursuant to Cooperation (as opposed to from any other source or pursuant to a court order).   Notwithstanding anything contained herein, Dealership Plaintiffs and Settlement Class Counsel are not relinquishing any rights to pursue discovery against Lear or KL Sales in the event that this settlement fails to receive final approval by the Court as contemplated herein, including final approval of "the Settlement Class" as defined in Paragraph 1.ff., or in the event that it is rescinded or terminated by any party under any provision herein.

23.     <u>Resolution of Disputes; Retention of Jurisdiction</u>.   Any disputes between or among Lear or KL Sales and any Settlement Class Member or Settlement Class Members concerning matters contained in this Settlement Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court.  The Court shall retain jurisdiction over the implementation and enforcement of this Settlement Agreement.

24.     <u>Other Claims</u>.   This Settlement Agreement does not settle or compromise any claim other than the Released Claims against the Released Parties.  All rights of any Settlement Class Member against any person or entity other than the Released Parties for sales made by the Released Parties are specifically reserved by Dealership Plaintiffs and the Settlement Class Members.  To the extent permitted and/or authorized by law, sales of Automotive Wire Harness Systems by the Released Parties in or into the United States shall remain in the Actions against the non-settling Defendants and/or any future defendants other than the Released Parties as a basis for damage claims, and shall be part of any joint and several liability claims in the Actions against the non-settling Defendants and/or any future defendants or persons or entities other than the Released Parties.

25.     <u>Binding Effect</u>.   This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.  Without limiting the generality of the foregoing, each and every covenant and agreement herein by the Dealership Plaintiffs and their counsel shall be binding upon all Settlement Class Members and Releasing Parties.

26.     <u>Authorization to Enter Settlement Agreement</u>.  The undersigned representative of Lear covenants and represents that such representative is fully authorized to enter into and to execute this Settlement Agreement on behalf of Lear.  The undersigned representative of KL Sales covenants and represents that such representative is fully authorized to enter into and to execute this Settlement Agreement on behalf of KL Sales.  Class Plaintiffs' Co-Lead Counsel represent that they are fully authorized on behalf of the Dealership Plaintiffs to conduct settlement negotiations with defense counsel and to enter into, and to execute, this Settlement Agreement on behalf of them and the Settlement Class.

27.    <u>Notices.</u>  All notices under this Settlement Agreement shall be in writing.  Each such notice shall be given either by (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express, UPS, or similar overnight courier and in the case of either (a), (b), or (c) shall be addressed, if directed to any Settlement Class Plaintiff or Settlement Class Member, to Class Plaintiffs' Co-Lead Counsel at their addresses set forth on the signature pages hereof, and if directed to Lear or KL Sales, to its representative(s) at the addresses set forth on the signature pages hereof, or such other address as Class Plaintiffs' Co-Lead Counsel, Lear, or KL Sales respectively, may designate from time to time by giving notice to all parties hereto in the manner described in this paragraph.  Copies of all notices under this Settlement Agreement may, at the notifying party's option, be transmitted by email to the appropriate parties.  Providing a copy by email shall only be in addition to, and not a substitute for, the formal notice mechanisms provided for in (a), (b), or (c) of this paragraph.

28.    <u>No Admission.</u>  Whether or not this Settlement Agreement becomes final or is rescinded or terminated pursuant its terms, the parties expressly agree that this Settlement Agreement and its contents, including without limitation its exhibits and any and all statements, negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing or of the truth of any of the claims or allegations contained in the complaints in the Actions or any other pleading or filing, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, whether in the Actions or in any other action or proceeding, including without limitation, for the avoidance of doubt, in connection with any assertion by the Dealership Plaintiffs on behalf of themselves or the Settlement Class, of any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors in their voluntary cases pending before the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code.

29.    <u>Confidentiality of Settlement Negotiations.</u>  Class Plaintiffs' Co-Lead Counsel and Plaintiffs' Counsel shall keep strictly confidential and not disclose to any third party any non-public information regarding the parties' negotiation of this settlement and/or this

Settlement Agreement.  For the sake of clarity, information contained within this Settlement Agreement shall be considered public once signed by all parties hereto.

30.     Intended Beneficiaries.  No provision of this Settlement Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Settlement Class Plaintiff, Settlement Class Member, a Released Party, or Plaintiffs' Counsel.  No Settlement Class Plaintiff, Settlement Class Member, or Plaintiffs' Counsel may assign or otherwise convey any right to enforce any provision of this Settlement Agreement.

31.     No Conflict Intended.  Any inconsistency between this Settlement Agreement and the exhibits attached hereto shall be resolved in favor of this Settlement Agreement.  The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

32.     No Party is the Drafter.  None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

33.     Choice of Law.  All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of Michigan without regard to its choice of law or conflict of law principles.

34.     Amendment; Waiver.  This Settlement Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument signed by the waiving party.  The waiver by any party of any breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

35.     Execution in Counterparts.  This Settlement Agreement may be executed in counterparts.  Facsimile or emailed .pdf images of by-hand signatures shall be considered as

valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

36.     <u>Entire Agreements.</u>   This Settlement Agreement and the confidential side letter agreement referenced in paragraphs 9 and 22, hereof, constitute the entirety of the agreements among the parties, hereto, and are not subject to any condition not provided for herein.   This Settlement Agreement supersedes any and all prior and contemporaneous undertakings and agreements of Dealership Plaintiffs, Lear, and KL Sales in connection herewith.   The Settlement Class Members and Class Plaintiffs' Co-Lead Counsel, or any of them, may hereafter discover facts other than or different from those that it knows or believes to be true with respect to the subject matter of this settlement, but the subsequent discovery or existence of such different or additional facts shall have no bearing on the validity of this Settlement Agreement once executed and shall not serve as a basis for any Party to challenge or otherwise seek to rescind, terminate, or cancel the settlement.

37.     <u>Class Action Fairness Act.</u>   Lear and KL Sales shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

*[Signatures Appear on the Following Page]*

Dated: May 5, 2014

_Jonathan W. Cuneo_
_____

Jonathan W. Cuneo
Joel Davidow
Daniel Cohen
Victoria Romanenko
CUNEO GILBERT & LADUCA, LLP
507 C Street, N.E.
Washington, D.C.  20002
Telephone:  (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
Vicky@cuneolaw.com


Don Barrett
Brian Herrington
David McMullan
Barrett Law Group, P.A.
P.O. Box 927
404 Court Square
Lexington, MS  39095
Telephone:  (662) 834-2488
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com


Shawn M. Raiter
Larson · King, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
Telephone:  (651) 312-6500
sraiter@larsonking.com

**Class Plaintiffs' Co-Lead Counsel**

_____

Andrew S. Marovitz
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
Telephone:  (312) 782-0600
Facsimile:  (312) 701-7711
amarovitz@mayerbrown.com
bmiller@mayerbrown.com


Howard B. Iwrey
Dante Stella
DYKEMA GOSSETT PLLC
39577 Woodward Ave.
Bloomfield Hills, Michigan 48304
Telephone:  (248) 203-0526
Facsimile:  (248) 203-0763
hiwrey@dykema.com
dstella@dykema.com

**Counsel for Lear Corporation**

_____

Wm. Parker Sanders (GBN 626020)
SMITH, GAMBRELL & RUSSELL, LLP
1230 Peachtree St., N.E., Ste. 3100
Atlanta, GA 30309
(404) 815-3684
psanders@sgrlaw.com


Jeffrey G. Heuer (P14925)
Peter M. Falkenstein (P61375)
JAFFE, RAITT, HEUER & WEISS, P.C.
27777 Franklin Rd., Ste. 2500
Southfield, MI 48034
(248) 351-3000
jheuer@jaffelaw.com
pfalkenstein@jaffelaw.com

**Counsel for Kyungshin-Lear Sales and
Engineering, LLC**

Dated: May 5, 2014

_____

Jonathan W. Cuneo
Joel Davidow
Daniel Cohen
Victoria Romanenko
CUNEO GILBERT & LADUCA, LLP
507 C Street, N.E.
Washington, D.C. 20002
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
Vicky@cuneolaw.com

Don Barrett
Brian Herrington
David McMullan
Barrett Law Group, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Shawn M. Raiter
Larson · King, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
sraiter@larsonking.com

**Class Plaintiffs' Co-Lead Counsel**

Andrew S. Marovitz
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
amarovitz@mayerbrown.com
bmiller@mayerbrown.com

Howard B. Iwrey
Dante Stella
DYKEMA GOSSETT PLLC
39577 Woodward Ave.
Bloomfield Hills, Michigan 48304
Telephone: (248) 203-0526
Facsimile: (248) 203-0763
hiwrey@dykema.com
dstella@dykema.com

**Counsel for Lear Corporation**

Wm. Parker Sanders (GBN 626020)
SMITH, GAMBRELL & RUSSELL, LLP
1230 Peachtree St., N.E., Ste. 3100
Atlanta, GA 30309
(404) 815-3684
psanders@sgrlaw.com

Jeffrey G. Heuer (P14925)
Peter M. Falkenstein (P61375)
JAFFE, RAITT, HEUER & WEISS, P.C.
27777 Franklin Rd., Ste. 2500
Southfield, MI 48034
(248) 351-3000
jheuer@jaffelaw.com
pfalkenstein@jaffelaw.com

**Counsel for Kyungshin-Lear Sales and Engineering, LLC**

## Exhibit A to the Settlement Agreement

1. *Landers Auto Group Number 1 v. Delphi Automotive LLP, et al.*, Case Nos. 11-00757 (E.D. Ark.), 2:12-cv-10676-MOB-MKM (E.D. Mich.)

2. *Martens Cars of Washington, Inc., v. Furukawa Electric Co., et al.*, Case Nos. 11-01892 (D.D.C.), 2:12-cv-10681-MOB-MKM (E.D. Mich.)

3. *Superstore Automotive, Inc. v. Delphi Automotive LLP, et al.*, Case Nos. 11-03092 (D. Minn.), 2:12-cv-10687-MOB-MKM (E.D. Mich.)

4. *Hammett Motor Company, Inc. v. Delphi Automotive LLP, et al.*, Case Nos. 11-00647 (S.D. Miss.), 2:12-cv-10688-MOB-MKM (E.D. Mich.)

5. *Rainbow Chevrolet, Inc. v. Denso International America, Inc., et al.*, Case No. 2:12-cv-12526-MOB-MKM (E.D. Mich.)

<u>Exhibit B to the Settlement Agreement</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| | : | |
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : | 12-md-02311 |
| | : | |
| | : | |
| | : | |
| PRODUCT(S): | : | Hon. Marianne O. Battani |
| | : | |
| AUTOMOTIVE WIRE HARNESSES | : | |
| | : | |
| | : | |
| This Document Relates to: | : | |
| | : | Case No. 12-cv-00102 |
| ALL DEALERSHIP ACTIONS | : | |
| | : | |

**[PROPOSED] ORDER GRANTING DEALERSHIP PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
WITH DEFENDANTS LEAR CORPORATION AND
KYUNGSHIN-LEAR SALES AND ENGINEERING, LLC AND
<u>PROVISIONAL CERTIFICATION OF A SETTLEMENT CLASS</u>**

Upon consideration of Dealership Plaintiffs' Motion for Preliminary Approval of Settlement with Defendants Lear Corporation ("Lear") and Kyungshin-Lear Sales and Engineering, LLC ("KL Sales") and Provisional Certification of a Settlement Class (the "Motion"), it is hereby **ORDERED** as follows:

      1.      The Motion is hereby **Granted.**

      2.      Unless otherwise set forth herein, defined terms in this Order shall have the same meaning ascribed to them in the Settlement Agreement.

<u>Preliminary Approval of Settlement Agreement</u>

      3.      This Court has jurisdiction over this action and each of the parties to the Settlement Agreement.

1

4.      The terms of the Settlement Agreement are hereby preliminarily approved, including the release contained therein, as being fair, reasonable, and adequate to the Settlement Class, subject to final approval at a Fairness Hearing.   The Court finds that the Settlement Agreement was entered into at arm's length by experienced counsel and is sufficiently within the range of reasonableness that notice of the Settlement Agreement should be given, pursuant to a plan to be submitted by Settlement Class Counsel and approved by the Court at a later date as provided in this Order.   The Court further finds there is a sufficient basis for notifying the class of the proposed settlement, pursuant to the Notice Motion (defined in paragraph 9 below), to be submitted by Dealership Plaintiffs for Court approval, and for enjoining class members from proceeding in any other action pending the conclusion of the Fairness Hearing.

<u>Class Certification</u>

5.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure and in light of the proposed settlement, the Court hereby finds that the prerequisites for a class action have been met and provisionally certifies the following class for settlement purposes (the "Settlement Class"):

> All automobile dealers that, during the period January 1, 2000 through May 5, 2014:  (1) purchased Automotive Wire Harness Systems manufactured by the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator, or (2) purchased vehicles containing Automotive Wire Harness Systems manufactured by the Defendants or any current or former subsidiary, affiliate thereof or co-conspirator."   Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal government entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Automotive Wire Harness Systems directly from Defendants.

6.      The Court finds that provisional certification of the Settlement Class is warranted in light of the Settlement Agreement because:  (a) the Settlement Class is so numerous that

joinder is impracticable; (b) Dealership Plaintiff Class representatives' claims present common issues of law and fact and are typical of the Settlement Class; (c) Dealership Plaintiff Class representatives and Settlement Class Counsel (defined below) will fairly and adequately represent the Settlement Class; and (d) common issues predominate over any individual issues affecting the members of the Settlement Class.  The Court further finds that Dealership Plaintiff Class representatives' interests are aligned with the interests of all other members of the Settlement Class.  The Court also finds settlement of this action on a class basis superior to other means of resolving the matter.

<u>Appointment of Settlement Class Counsel</u>

7.      The Court hereby appoints Cuneo Gilbert & LaDuca, LLP 507 C Street, N.E., Washington, DC 20002; **[insert others]** as Settlement Class Counsel, having determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are fully satisfied by this appointment.

8.      Each Dealership Plaintiff Class representative named in the Complaint will serve as Dealership Plaintiff Class representative on behalf of the Settlement Class.

<u>Notice to Potential Class Members</u>

9.      Prior to the Fairness Hearing, Settlement Class Counsel shall utilize the best available means of providing notice of the Settlement Agreement and the Fairness Hearing to all persons affected by and/or entitled to participate in the Settlement Agreement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law.  Such means of providing notice will be addressed in a subsequent Order following submission by Dealership Plaintiffs at a later date of a proposal for notice to the Settlement Class and related forms for notice, claims, and distribution ("Notice Motion").

10.     The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice, consistent with the Settlement Agreement.  The date on which the notice is mailed shall be the "Notice Date."

11.     Notice to members of the Settlement Class, except statutory notice required to be given by Lear and KL Sales pursuant to 28 U.S.C. § 1715, shall be the responsibility of Settlement Class Counsel.

<u>Other Provisions</u>

12.     As of the date of the entry of this Order, Dealership Plaintiffs and all members of the Settlement Class shall be preliminarily enjoined from commencing, prosecuting, or continuing any action against Lear and/or KL Sales based upon or related to the Released Claims pending Final Approval of the settlement or until such time as this Court lifts such injunction by subsequent order.

13.     In the event that the Settlement Agreement is terminated in accordance with its provisions, the Settlement Agreement and all proceedings had in connection therewith shall be null and void, except insofar as expressly provided to the contrary in the Settlement Agreement, and without prejudice to the *status quo ante* rights of Dealership Plaintiffs, Lear, KL Sales, or the members of the Settlement Class.

14.     The Court's provisional certification of the Settlement Class as provided herein is without prejudice to, or waiver of, the rights of any Defendant to contest certification of any other class proposed in these coordinated actions.  The Court's findings in this Order shall have no effect on the Court's ruling on any motion to certify any class in these actions or on the Court's ruling(s) concerning any Defendant's motion; and no party may cite or refer to the

Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

15.      The Court approves the establishment of the escrow account under the Settlement Agreement as a qualified settlement fund ("QSF") pursuant to Internal Revenue Code Section 1.468B-1 and the Treasury Regulations promulgated thereunder, and retains continuing jurisdiction as to any issue that may arise in connection with the formation and/or administration of the QSF.   Settlement Class Counsel are, in accordance with the Settlement Agreement, authorized to expend funds from the QSF for the payment of the costs of notice, payment of taxes, and settlement administration costs.

16.      If the Settlement Agreement is terminated or is ultimately not approved, any of the parties may seek to modify any Court-ordered schedule to ensure that the Dealership Plaintiffs, Lear, and KL Sales will have sufficient time to prepare for the resumption of litigation, including but not limited to the completion of discovery, preparation of expert reports, the filing of class certification motion(s), the filing of summary judgment motion(s), and preparation for trial.   The Dealership Plaintiffs, Lear, and KL Sales have agreed, and the Court so orders, that this Settlement Agreement and its contents, including its exhibits, and any and all statements, negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing or of the truth of any of the claims, allegations, or defenses contained in the complaints in the Actions or any other pleading or filing, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, whether in the Actions or in any other action or proceeding.   Neither this Settlement Agreement, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out its terms by Lear and/or

KL Sales shall be referred to, offered as evidence, or received in evidence in any pending or future civil, criminal, or administrative action or proceedings, except in a proceeding to enforce this Settlement Agreement, or to defend against the assertion of the Released Claims, or as otherwise required by law.

17.     The litigation against Lear and KL Sales is stayed except to the extent necessary to effectuate the Settlement Agreement.


IT IS SO ORDERED

_____
HON. MARIANNE O. BATTANI
U.S. DISTRICT JUDGE


Dated: _____, 2014