# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

## SOUTHERN DIVISION

---

| | |
|---|---|
| IN RE:  AUTOMOTIVE PARTS ANTITRUST LITIGATION | No. 12-md-02311<br>Hon. Sean F. Cox |

---

| | |
|---|---|
| IN RE: AUTOMOTIVE WIRE HARNESSES | CASE NO. 2:12-CV-00102 |
| IN RE: INSTRUMENT PANEL CLUSTERS | CASE NO. 2:12-CV-00202 |
| IN RE: FUEL SENDERS | CASE NO. 2:12-CV-00302 |
| IN RE: HEATER CONTROL PANELS | CASE NO. 2:12-CV-00402 |
| IN RE: BEARINGS | CASE NO. 2:12-CV-00502 |
| IN RE: OCCUPANT SAFETY SYSTEMS | CASE NO. 2:12-CV-00602 |
| IN RE: ALTERNATORS | CASE NO. 2:13-CV-00702 |
| IN RE: ANTI-VIBRATION RUBBER PARTS | CASE NO. 2:13-CV-00802 |
| IN RE: WINDSHIELD WIPERS | CASE NO. 2:13-CV-00902 |
| IN RE: RADIATORS | CASE NO. 2:13-CV-01002 |
| IN RE: STARTERS | CASE NO. 2:13-CV-01102 |
| IN RE: AUTOMOTIVE LAMPS | CASE NO. 2:13-CV-01202 |
| IN RE: SWITCHES | CASE NO. 2:13-CV-01302 |
| IN RE: IGNITION COILS | CASE NO. 2:13-CV-01402 |
| IN RE: MOTOR GENERATORS | CASE NO. 2:13-CV-01502 |
| IN RE: STEERING ANGLE SENSORS | CASE NO. 2:13-CV-01602 |
| IN RE: HID BALLASTS | CASE NO. 2:13-CV-01702 |
| IN RE: INVERTERS | CASE NO. 2:13-CV-01802 |
| IN RE: ELECTRONIC POWERED STEERING ASSEMBLIES | CASE NO. 2:13-CV-01902 |
| IN RE: AIR FLOW METERS | CASE NO. 2:13-CV-02002 |
| IN RE: FAN MOTORS | CASE NO. 2:13-CV-02102 |
| IN RE: FUEL INJECTION SYSTEMS | CASE NO. 2:13-CV-02202 |
| IN RE: POWER WINDOW MOTORS | CASE NO. 2:13-CV-02302 |
| IN RE: AUTOMATIC TRANSMISSION FLUID WARMERS | CASE NO. 2:13-CV-02402 |
| IN RE: VALVE TIMING CONTROL DEVICES | CASE NO. 2:13-CV-02502 |
| IN RE: ELECTRONIC THROTTLE BODIES | CASE NO. 2:13-CV-02602 |
| IN RE: AIR CONDITIONING SYSTEMS | CASE NO. 2:13-CV-02702 |
| IN RE: WINDSHIELD WASHERS | CASE NO. 2:13-CV-02802 |
| IN RE: CONSTANT VELOCITY JOINT BOOTS | CASE NO. 2:14-CV-02902 |
| IN RE: SPARK PLUGS | CASE NO. 2:15-CV-03002 |
| IN RE: AUTOMOTIVE HOSES | CASE NO. 2:15-CV-03202 |
| IN RE: SHOCK ABSORBERS | CASE NO. 2:16-CV-03302 |
| IN RE: BODY SEALING PRODUCTS | CASE NO. 2:16-CV-03402 |
| IN RE: INTERIOR TRIM PRODUCTS | CASE NO. 2:16-CV-03502 |
| IN RE: BRAKE HOSES | CASE NO. 2:16-CV-03602 |
| IN RE: EXHAUST SYSTEMS | CASE NO. 2:16-CV-03702 |

IN RE: CERAMIC SUBSTRATES                CASE NO. 2:16-CV-03802
IN RE: POWER WINDOW SWITCHES            CASE NO. 2:16-CV-03902
IN RE: AUTOMOTIVE STEEL TUBES          CASE NO. 2:16-CV-04002
IN RE: ACCESS MECHANISMS               CASE NO. 2:16-CV-04102
IN RE: MINIMODULES                     CASE NO. 2:17-CV-04302
IN RE: SIDE DOOR LATCHES               CASE NO. 2:17-CV-13005

THIS DOCUMENT RELATES TO:
Automobile Dealership Actions

---

## CERTAIN AUTOMOBILE DEALERSHIP SETTLEMENT CLASS MEMBERS' MOTION TO ENFORCE PLANS OF ALLOCATION WITH REGARD TO RESERVE FUND ELIGIBILITY

Automobile Dealership Settlement Class members Wolfe Automotive Group, Kings Nissan & Kings Infiniti, and Young Automotive Group LLC[1] ("Dealership Members") respectfully move the Court to protect their right to receive payment from the reserve funds as set out in the Plans of Allocation ("Plans") as they are plainly entitled to as class members with valid claims in this proceeding.[2]  Specifically, Dealership Members move this Court to enforce the plain language of the Plans that all class members who have submitted valid claims are entitled to their *pro rata* share of the funds held in reserve from all settlements.  Otherwise, Dealership Members are forced to release all claims against Defendants without adequate compensation for the harm they incurred as a result of Defendants' illegal actions.

---

[1] Dealership Members include 35 Dealership Class members.  The names of all 35 individual class members are provided in the accompanying Declaration of Emma K. Burton (Burton Decl.) along with the relevant claimant IDs.  Burton Decl. ¶¶ 3-5.

[2] Based on representations made by class counsel, Dealership Members have filed this Motion in the instant case rather than in every Dealership settlement proceeding.  In a July 15, 2020, telephone communication, class counsel indicated that Dealership Members needed to file in only one case  in order to appropriately address the reserve fund dispute in the overall Dealership action.  Should the Court prefer to receive a separate Motion in each action, Dealership Members can also file in the additional, individual matters.

2

In support of this Motion, Dealership Members rely upon and incorporate by reference herein the facts and legal arguments set forth in the accompanying Memorandum, as well as in the Emergency Motion to Delay Distribution of Reserve Funds Pending Resolution of Class Member Eligibility (ECF No. 587) filed July 23, 2020.

July 31, 2020

Respectfully submitted,

By: */s/ Jared A. Levine*
Jared A. Levine
Crowell & Moring LLP
590 Madison Avenue
New York, NY 10022
Telephone: (212) 803-4000
Facsimile: (212) 223-4134
Email: jalevine@crowell.com

Deborah E. Arbabi
Daniel A. Sasse
Crowell & Moring LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
Telephone: (949) 263-8400
Facsimile: (949) 263-8414
Email: darbabi@crowell.com
        dsasse@crowell.com

Emma K. Burton
Ann L. Rives
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
Email: eburton@crowell.com
        arives@crowell.com

Attorneys for Dealership Members

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION

---

| | |
|---|---|
| IN RE:  AUTOMOTIVE PARTS ANTITRUST LITIGATION | No. 12-md-02311<br>Hon. Sean F. Cox |

---

| | |
|---|---|
| IN RE: AUTOMOTIVE WIRE HARNESSES | CASE NO. 2:12-CV-00102 |
| IN RE: INSTRUMENT PANEL CLUSTERS | CASE NO. 2:12-CV-00202 |
| IN RE: FUEL SENDERS | CASE NO. 2:12-CV-00302 |
| IN RE: HEATER CONTROL PANELS | CASE NO. 2:12-CV-00402 |
| IN RE: BEARINGS | CASE NO. 2:12-CV-00502 |
| IN RE: OCCUPANT SAFETY SYSTEMS | CASE NO. 2:12-CV-00602 |
| IN RE: ALTERNATORS | CASE NO. 2:13-CV-00702 |
| IN RE: ANTI-VIBRATION RUBBER PARTS | CASE NO. 2:13-CV-00802 |
| IN RE: WINDSHIELD WIPERS | CASE NO. 2:13-CV-00902 |
| IN RE: RADIATORS | CASE NO. 2:13-CV-01002 |
| IN RE: STARTERS | CASE NO. 2:13-CV-01102 |
| IN RE: AUTOMOTIVE LAMPS | CASE NO. 2:13-CV-01202 |
| IN RE: SWITCHES | CASE NO. 2:13-CV-01302 |
| IN RE: IGNITION COILS | CASE NO. 2:13-CV-01402 |
| IN RE: MOTOR GENERATORS | CASE NO. 2:13-CV-01502 |
| IN RE: STEERING ANGLE SENSORS | CASE NO. 2:13-CV-01602 |
| IN RE: HID BALLASTS | CASE NO. 2:13-CV-01702 |
| IN RE: INVERTERS | CASE NO. 2:13-CV-01802 |
| IN RE: ELECTRONIC POWERED STEERING ASSEMBLIES | CASE NO. 2:13-CV-01902 |
| IN RE: AIR FLOW METERS | CASE NO. 2:13-CV-02002 |
| IN RE: FAN MOTORS | CASE NO. 2:13-CV-02102 |
| IN RE: FUEL INJECTION SYSTEMS | CASE NO. 2:13-CV-02202 |
| IN RE: POWER WINDOW MOTORS | CASE NO. 2:13-CV-02302 |
| IN RE: AUTOMATIC TRANSMISSION FLUID WARMERS | CASE NO. 2:13-CV-02402 |
| IN RE: VALVE TIMING CONTROL DEVICES | CASE NO. 2:13-CV-02502 |
| IN RE: ELECTRONIC THROTTLE BODIES | CASE NO. 2:13-CV-02602 |
| IN RE: AIR CONDITIONING SYSTEMS | CASE NO. 2:13-CV-02702 |
| IN RE: WINDSHIELD WASHERS | CASE NO. 2:13-CV-02802 |
| IN RE: CONSTANT VELOCITY JOINT BOOTS | CASE NO. 2:14-CV-02902 |
| IN RE: SPARK PLUGS | CASE NO. 2:15-CV-03002 |
| IN RE: AUTOMOTIVE HOSES | CASE NO. 2:15-CV-03202 |
| IN RE: SHOCK ABSORBERS | CASE NO. 2:16-CV-03302 |
| IN RE: BODY SEALING PRODUCTS | CASE NO. 2:16-CV-03402 |
| IN RE: INTERIOR TRIM PRODUCTS | CASE NO. 2:16-CV-03502 |
| IN RE: BRAKE HOSES | CASE NO. 2:16-CV-03602 |
| IN RE: EXHAUST SYSTEMS | CASE NO. 2:16-CV-03702 |

| | |
|---|---|
| IN RE: CERAMIC SUBSTRATES | CASE NO. 2:16-CV-03802 |
| IN RE: POWER WINDOW SWITCHES | CASE NO. 2:16-CV-03902 |
| IN RE: AUTOMOTIVE STEEL TUBES | CASE NO. 2:16-CV-04002 |
| IN RE: ACCESS MECHANISMS | CASE NO. 2:16-CV-04102 |
| IN RE: MINIMODULES | CASE NO. 2:17-CV-04302 |
| IN RE: SIDE DOOR LATCHES | CASE NO. 2:17-CV-13005 |

_____

THIS DOCUMENT RELATES TO:

Automobile Dealership Actions

_____

**<u>MEMORANDUM IN SUPPORT OF CERTAIN AUTOMOBILE DEALERSHIP
SETTLEMENT CLASS MEMBERS' MOTION TO ENFORCE PLANS OF
ALLOCATION WITH REGARD TO RESERVE FUND ELIGIBILITY</u>**

ii

## STATEMENT OF THE ISSUES PRESENTED

1. Whether Settlement Class members who have submitted valid claims and who must release all claims against Defendants for their illegal conduct are entitled to compensation from the funds held in reserve from all settlements to which they are class members:

   **Answer:** Yes.  Under the plain language of the Plans of Allocation, all "eligible Settlement Class members," not just individual claimants in a specific round of settlements, are entitled to the reserve funds to the settlements of which they are class members.  Further, it is well within the Court's broad equity powers to compensate all identified class members from reserve funds in order to avoid the inequity of forcing class members to release their claims against Defendants without compensation for the harms incurred.  Courts and class counsel owe a fiduciary duty to all class members to prevent such inequities from occurring.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2018)[1]

*Beecher v. Able*, 575 F.2d 1010 (2d Cir. 1978)

*In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315 (3d Cir. 2001)

*In re "Agent Orange" Prod. Liab. Litig.*, 689 F.Supp. 1250 (E.D.N.Y. 1988)

---

[1] Per this Court's Practice Guidelines, copies of these cases have been filed as part of the Appendix in Support of the Motion to Enforce.  *See* App. ISO Mot. to Enforce ("App."), Exs. 1 to 4.

iv

## <u>TABLE OF CONTENTS</u>

**Page**

STATEMENT OF THE ISSUES PRESENTED ........................................................ iii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ............................... iv

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................ 4

ARGUMENT ................................................................................................. 7

I.      All Identified Class Members Are Entitled to a Share of the Cumulative Reserve Funds Under the Plain Meaning of the Plans of Allocation ............................................................................ 7

      A.      Plans of Allocation Provide for Distribution of Reserve Funds to All Eligible Class Members, Not Simply Round-Specific Claimants ........................................................ 7

      B.      Dealership Members Meet the Class Eligibility Requirements Specified in the Plans of Allocation and Should Receive Their Share of Cumulative Reserve Funds ......... 8

II.     Principles of Fairness and Equity Dictate Allocation of Reserve Funds to the Identified Members of All Settlement Classes .................... 10

      A.      Court's Equitable Powers Extend to All Class Members Not Just Early Filers ................................................. 11

      B.      Class Counsel and Courts Have a Fiduciary Duty to All Class Members .......................................................... 12

      C.      Settlement "Rounds" Were Used for Administrative Efficiency and Do Not Determine Settlement Class Membership ...................................................................... 14

      D.      Payment of Reserve Funds to All Identified Members Will Not Prejudice Earlier Filers Nor Unduly Delay Distribution of Settlement Funds ................................................ 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.*,
  689 F.Supp. 1250 (E.D.N.Y. 1988).........................................................iv, 3, 15

*In re Authentidate Holding Corp. Sec. Litig.*,
  2013 WL 324153 (S.D.N.Y Jan. 25, 2013) ...........................................16

*Beecher v. Able*,
  575 F.2d 1010 (2d Cir. 1978)...............................................................iv, 10

*Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  No. 09-3690, ECF Nos. 786, 802  (N.D. Ill. 2016)........................11, 12

*In re Dry Max Pampers Litig.*,
  724 F.3d 713 (6th Cir. 2018) ................................................. iv, 2, 12, 13

*In re Folding Carton Antitrust Litig.*,
  557 F.Supp. 1091 (N.D. Ill. 1983), aff'd in part, 744 F.2d 1252 (7th Cir. 1984)..............1, 11

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  327 F.R.D. 483 (S.D.N.Y. 2018) ....................................................11, 14

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
  246 F.3d 315 (3d Cir. 2001) ................................................. iv, 11, 13, 16

*In re Polyurethane Foam Antitrust Litig.*,
  No. 10-2196 (N.D. Ohio 2016).........................................................3, 11, 12

*In re TFT-LCD Flat Panel Antitrust Litig.*,
  No. 3:07-md-0187-SI (N.D. Cal. 2014) ...............................................1, 11

*In re Urethane Antitrust Litig.*,
  No. 04-md-1616, 2008 WL 5215980 (D. Kan. Dec. 12, 2008)............16

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
  396 F.3d 922 (8th Cir. 2005) ...............................................................13

*Zients v. LaMorte*,
  459 F.2d 628 (2d Cir. 1972) .................................................................11

**Other Authorities**

Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A
  Pocket Guide for Judges 11 (Fed. Judicial Ctr. 2010) .........................13

http://www.autodealersettlement.com.......................................................................................... 6, 16

https://kccsecure.com/autodealersettlement/Claimant/Register ....................................................5

Manual for Complex Litigation § 21.662 (4th ed. 2004) ...........................................................10

## INTRODUCTION

Automobile Dealership Settlement Class members Wolfe Automotive Group, Kings Nissan & Kings Infiniti, and Young Automotive Group LLC[1] ("Dealership Members") bring this motion to respectfully request that the Court enforce the Plans of Allocation ("Plans") with regard to Dealership Members' right to receive payment from the reserve funds to all Dealership settlements of which they are class members.  Without this action by the Court, Dealership Members—and over 1,500 class members similarly situated[2]—will be forced to release *all* claims against Defendants without equitable compensation for the harms they incurred through Defendants' illegal actions.  Such forfeiture runs contrary to established case law, providing that "every opportunity should be afforded [to] class members . . . to come forward and collect their rightful share of the settlement."  *In re Folding Carton Antitrust Litig.*, 557 F.Supp. 1091, 1104 (N.D. Ill. 1983), aff'd in part, 744 F.2d 1252 (7th Cir. 1984).  Moreover, reserve funds are routinely used in settlement administration for just this purpose, namely, compensating additional victims in order to avoid an inequitable forfeiture of their claims.  *See, e.g.,* Order Re: Indirect Purchaser Pls.' and States' Attys. General's Jt. Mot. for Interim Reimbursement of Expenses at 3:2-4, 9-13, *In re TFT-LCD Flat Panel Antitrust Litig.*, No. 3:11-cv-00711 (N.D. Cal. Oct. 20, 2014), ECF No. 9273 ("TFT-LCD Flat Panel Order") (App. Ex. 5 at 3.)

---

[1] Dealership Members represent 35 individual Dealership Class members.  Burton Decl. ¶¶ 3-5.
[2] Over 3,400 Dealership Class members submitted claims in Round 1, and that number increased to approximately 5,000 Dealership Class members by Round 3 claim submissions.  *See* Auto Dealers' Mem. ISO Mot. for Final Approval of Settlements (Round 4) at 2, *In re Bearings*, No. 2:12-cv-00502-SFC-RSW (Dec. 16, 2019), ECF No. 286.  Therefore, under the position that class counsel is now taking—that only claimants to individual rounds are entitled to the reserve funds from the settlements in those individual rounds—approximately 1,500 class members would be denied their share of reserve funds from earlier settlements under which they must nonetheless release claims against Defendants.  There are likely additional Class members similarly affected who filed initially in Round 4.

Class counsel has a fiduciary duty to *all* members of the Settlement Classes, not just early filers, and "courts must carefully scrutinize whether those fiduciary obligations have been met." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2018).  Here, Dealership Members together made hundreds of thousands of new vehicle purchases during the class period, incurring significant damages as a result of Defendants' illegal price-fixing conspiracy.  Upon learning of their eligibility to compensation for those damages, Dealership Members filed valid and timely claims to the settlements—over a year ago.  Dealership Members seek no portion of the advance payments made to those claimants filing in earlier rounds, but rather seek only their *pro rata* share of the reserve funds set aside in each round for "future allocation and distribution to eligible Settlement Class members."[3]  However, class counsel now takes the position that reserve fund payments should be distributed on a round-specific basis and only to those class members who filed claims in the corresponding round.  Class counsel's position allows a payment mechanism adopted only for administrative convenience—grouping settlements by round—to abrogate members' rights to receive reserve fund payments from settlements to which they are class members and clearly are entitled.  Further, class counsel's position gives earlier filers a windfall from funds held in reserve, while providing no compensation to other equally harmed class members.  Such an outcome is unjust and must be avoided.

Although their claims were filed as part of the third grouping or "round" of settlements, Dealership Members are equally members of the Settlement Classes in settlements from earlier rounds and are thus entitled to a portion of the reserve funds from those settlements, as plainly

---

[3] *E.g.,* Distribution/Allocation Plan for Wire Harness Settlements at 2, ECF 443-10.

articulated in the Plans.[4]   The Plans provide that reserve funds be paid to "eligible Settlement Class members" with payments "based on their *pro rata* share of the settlement funds and the eligible claims filed."[5]

That Dealership Members submitted *timely* claims in Round 3 does not negate their status as class members to the settlements in Rounds 1 and 2.  To deny them eligibility to reserve funds from *all* settlements of which they are class members would result in a gross inequity, particularly given their release of *all* claims against Defendants *regardless of "round."*

Setting aside the plain language of the Plans, principles of equity and fairness ultimately necessitate that Dealership Members be compensated for their undisputed injuries.  Those principles take priority over the artificial "round" deadlines created by class counsel and the claims administrator for administrative convenience.  It would be "unfair to prevent otherwise valid claims from participating in the distribution of . . . funds solely because they were submitted after the cut-off dates."  *In re Polyurethane Foam Antitrust Litig.*, No. 10-2196, ECF Nos. 2086, 2095, 2172, 2184 (N.D. Ohio 2016) (plaintiffs' distribution motion approved by orders dated May 16, 2016 and Oct. 30, 2017).[6]

Contrary to class counsel's position, compensating Dealership Members will not prejudice earlier filers who have already received payments and who "have no justifiable expectation of any particular pay-out." *In re "Agent Orange Prod. Liab. Litig.*, 689 F. Supp. 1250, 1263 (E.D.N.Y. 1988).  Earlier filers would receive their *pro rata* share of the reserve funds from Rounds 1 and 2 and suffer no prejudice from the Dealership Members' receipt of

---

[4] The same eligibility holds for Dealership class members filing valid Proofs of Claims initially in Round 4; they are equally class members for the settlements grouped in Rounds 1 through 3.
[5] *E.g.,* Distribution/Allocation Plan for Wire Harness Settlements at 2, ECF 443-10.
[6] App. Ex. 6 at 10; Ex. 7 at 1; Ex. 8 at 3, Ex. 9 at 8

their own *pro rata* share based on their valid claims as class members.  Further, Dealership Members each submitted valid Proofs of Claim and those claims have been substantiated by the claims administrator, so there is no question they are entitled to their *pro rata* share of earlier rounds' reserves.

Finally, if including Dealership Members and others similarly situated would delay distribution of funds held in reserve while recalculating *pro rata* shares, any such delay would be the result of class counsel's failure to put in place a process that appropriately allocates reserve funds based on both the plain meaning of the Plans as well as the fiduciary duty class counsel owes *all* Settlement Class members.  The issue is ultimately one of fairness, rather than delay—if class counsel intends to fairly represent the entire class, class counsel cannot deny valid class members compensation simply because it failed to develop appropriate mechanisms to compensate *all* class members in the first place.  The alternative—denying valid class members their share of the reserve funds while still requiring a full release of claims against Defendants—would be the height of inequity and violate the fiduciary duty class counsel and the Court owes to all class members.

## BACKGROUND

During the relevant time period for all of the Dealership settlements,  Dealership Members purchased hundreds of thousands of new vehicles containing component parts manufactured—and price fixed—by Defendants, incurring significant overcharges based on Defendants' illegal conduct.  Declaration of Emma K. Burton (Burton Decl.) ¶ 2.  After becoming aware of their eligibility to participate in the Automobile Dealership Settlements, Dealership Members each submitted a valid Proof of Claim prior to the January 21, 2019 Round 3 filing deadline.  *Id.* ¶¶ 3-5.  Dealership Members' claims were processed and approved by the

claims administrator, with initial Round 3 settlement fund payments distributed between January and April 2020. *Id.*

Because the individual parts settlements were treated as part of the larger, overall group of settlements with Defendants, class members submitting claims early in the process were able to "rely on that Proof of Claim and do nothing further to participate" in the future settlements with Defendants.[7]  Although claims submitted in earlier rounds were automatically processed in subsequent rounds, Dealership Members also filed timely claims to the fourth and final round of settlements, including vehicles purchased in the expanded time frame for the Round 4 settlements.  Burton Decl. ¶ 6.  Initial distribution in the fourth group of settlements has not yet occurred, but in a May 19, 2020, filing with the Court, class counsel represented that the Auto Dealers are "nearly ready to distribute the settlements."   Mem. ISO Mot. for Approval of Additional Plans for Round Four Settlements at 9, *In re Bearings*, No. 2:12-cv-00502-SFC-RSW (May 19, 2020), ECF No. 296.

Because of the large number of parts and associated Defendants involved in the overall Automobile Dealership action, class counsel opted to defer notice—and the corresponding initial claims process—"because the Settlements initially involved a relatively small number of parts and Defendants in only certain of the cases within 12-md-02311."  Mem. ISO Dealership Pls.' Mot. to Authorize Dissemination of Class Notice at 2 (Aug. 25, 2015), ECF No. 343 ("Aug. 25, 2015 Motion").  Once class counsel had what it considered an appropriate number of settlements, class counsel would request "leave to provide notice."  *See, e.g.,* Mem. ISO Dealership Pls.' Mot. to Authorize Dissemination of Class Notice at 3 (Aug. 25, 2016), ECF No. 499; *see also*

---

[7] Automobile Dealership Online Claim Form *available at*
https://kccsecure.com/autodealersettlement/Claimant/Register (last visited July 26, 2020).

Aug. 25, 2015 Motion at 2 ("The interests of economy were better served by deferring notice and final approval until more settlements were reached.  The aggregate Settlements now warrant the Dealership Plaintiffs' request to issue notices in these cases at this time.")  Class counsel performed this aggregation of settlements four times, and in doing so, constructed four rounds and corresponding notice periods.  *See* Automotive Parts Antitrust Litigation Settlement, autodealersettlement.com (last visited July 26, 2020).

For each settlement grouping, class counsel set aside reserve funds "for future allocation and distribution to eligible Settlement Class members." *See, e.g.,* Distribution/Allocation Plan Wire Harness Settlements (Ex. L to Decl. of Shawn M. Raiter) at 2 (Nov. 14, 2016), ECF No. 519-1 at 78. .  Class counsel created the reserve funds to account for "information not currently available about affected, parts, models, and brands," and class counsel acknowledged that if the funds were not needed for that purpose, they would be "distributed on a *pro rata* basis to the members of the Settlement Classes in their respective cases."  *See, e.g.,* Auto Dealers' Mem. ISO Mot. for Approval of Add'l Allocation Plans for Settlements Previously Approved by the Court at 2-3 (March 14, 2016), ECF No. 443. .

Upon learning that class counsel was "nearly ready to distribute the settlement funds held in reserve"[8] for the first three rounds, despite the fact that the claims review process for the fourth and final round of settlements had not been completed, Dealership Members contacted class counsel and the claims administrator via email on June 22, 2020, to discuss reserve fund distribution. Burton Decl. ¶¶ 8-9.  During a call on July 6, 2020, the claims administrator represented that no values had been set yet for reserve fund distribution, and could not confirm

---

[8] Auto Dealers' Mem. ISO Mot. to Award Fees Placed in Reserve in 2016 for Round Two Settlements at 5 (June 8, 2020), ECF No. 584.

that Dealership Members were eligible to receive cumulative reserve funds from all settlements to which they were class members. *Id.*  However the claims administrator noted that Dealership Members "raise a good question" with regard to reserve fund eligibility and offered to take the question back to class counsel.  *Id.* ¶ 9.  Class counsel responded with a July 10, 2020, letter to Dealership Members, denying their eligibility to reserve funds for all settlements to which they are class members.  *Id.* ¶ 10.  Dealership Members conferred with class counsel on July 15, 2020, in an effort to resolve the issue, but the parties were unable to reach an agreement.  *Id.* ¶ 11. Class counsel advised by email on July 22, 2020, that they would move forward with reserve fund distribution as soon as possible after July 31, 2020, unless an order was in place by that date to delay distribution, thereby necessitating the Emergency Motion to Delay Distribution of Reserve Funds filed with the Court on July 23, 2020 (ECF No. 587).  *Id.* ¶ 12.

## ARGUMENT

**I.    All Identified Class Members Are Entitled to a Share of the Cumulative Reserve Funds Under the Plain Meaning of the Plans of Allocation**

### A.    Plans of Allocation Provide for Distribution of Reserve Funds to All Eligible Class Members, Not Simply Round-Specific Claimants

Despite class counsel now taking a position to the contrary, a plain reading of the Plans of Allocation demonstrates Dealership Members' entitlement to a *pro rata* share of the cumulative reserve funds.  Based on the language of the Plans and their supporting Memoranda, all identified class members (*i.e.*, those who submitted a valid Proof of Claim) are eligible to receive reserve funds from all settlements in which they are a member of the Settlement Class— without regard for the "round" in which they filed.  Each Plan outlines the creation of "A reserve fund for future allocation and distribution to *eligible Settlement Class members*" and that such funds "will be paid to eligible dealerships based on their *pro rata* share of the settlement funds and eligible claims filed."  *E.g.,* Distribution/Allocation Plan Wire Harness Settlements (Ex. L to

7

Decl. of Shawn M. Raiter) at 2 (Nov. 14, 2016), ECF No. 519-1 at 78 (emphasis added). Further, the Memoranda in support of these Plans all use similarly inclusive language, expressly stating, for example, that "reserve funds will be distributed on a *pro rata* basis to the **members** of the Round 2 Settlement Classes in their respective cases."  Auto Dealers' Mem. ISO Mot. for Approval of Additional Allocation Plans at 3 (July 13, 2018), ECF No. 559.

Class counsel now takes the position that because Dealership Members did not file claims in earlier "rounds," they have forgone their eligibility to reserve funds from those settlements, notwithstanding the plain reading of the Plans of Allocation.  Regardless of whether a dealership files a claim by the deadline of a particular round (*e.g.*, "Round Two"), that dealership nonetheless remains a "Round Two **class member**"—the term of art used in each Plan of Allocation.  Further, as a "Round Two Class Member," that dealership has released its claims against that round's Defendants *regardless of the timing of the dealership's claim filing*.

Had class counsel wanted to restrict reserve fund distribution only to a particular round's "claimants," it could have used the term "claimant" in the Plans and provided that only those dealerships that had filed a claim by the round deadline would be eligible for reserve funds. Class counsel did not do that and instead chose the more inclusive term "class member." Through use of that term, class counsel correctly defined those dealerships entitled to reserve funds more broadly, in order to more fully and equitably compensate **class members** in exchange for their release of claims against Defendants.

**B.     Dealership Members Meet the Class Eligibility Requirements Specified in the Plans of Allocation and Should Receive Their Share of Cumulative Reserve Funds**

Dealership Members are squarely within the class definition for each settlement grouped in Rounds 1 through 4, and thus meet the criteria specified in the Plans of Allocation to receive their *pro rata* share of the cumulative reserve funds from all settlements including Rounds 1 and

2.   The goal behind creation of settlement "rounds" was not to establish additional substantive hurdles or restrictions to class members' eligibility, but rather to aggregate the individual parts settlements more efficiently for administrative convenience.  In addition, class counsel clearly indicated the interrelatedness of each settlement in the Plans of Allocation, referencing for example, that "[t]he percentage of reserve funds in each of the future settlements may vary." *E.g.,* Distribution/Allocation Plan Wire Harness Settlements (Ex. L to Decl. of Shawn M. Raiter) at 2 (Nov. 14, 2016), ECF No. 519-1 at 78.  As recently as December 2019, class counsel emphasized the aggregate settlement achieved after the Round 4 recovery had been "added to the Round One, Round Two, and Round Three settlements."  Decl. of Shawn M. Raiter ISO Auto Dealers' Mot. for Final Approval of Settlements (Round Four) at 3, No. 2:12-cv-00502-SFC-RSW (Dec. 16, 2019), ECF No. 286-1 ("Dec. 16, 2019 Raiter Decl.").

By submitting valid Proofs of Claim in Round 3 with substantiated vehicle purchases during the relevant time periods for settlements in earlier rounds, Dealership Members are squarely within the Settlement Classes for the settlements grouped in Rounds 1 and 2, and as such are entitled to reserve funds from *all* settlements to which they are class members— including those in Rounds 1 and 2.  Indeed, the analogous End-Payor settlements provide a good example of the aggregate nature of these settlements. There, despite multiple "rounds" of settlements, only one deadline was set for class members to file claims to all settlements—at the conclusion of all rounds—further demonstrating the cumulative nature of the proceedings.  For Dealership Members, the Plans of Allocation are clear: membership in a Settlement Class, and not claim timing, takes priority.  Here, where Dealership Members have submitted *timely* claims and those claims have been substantiated through the claims process, their eligibility as

Settlement Class members and corresponding eligibility to reserve funds for those settlements cannot and should not be denied.

## II.   Principles of Fairness and Equity Dictate Allocation of Reserve Funds to the Identified Members of All Settlement Classes

It bears repeating that Dealership Members all submitted *timely* claims in this proceeding, and without dispute, are members of the Settlement Classes for those settlements grouped in Rounds 1 through 4—even though they did not receive any distribution from advance payments made in earlier rounds.  Keeping in mind their timeliness, it is nevertheless instructive to look to the established case law on *late* claims to understand the goals of an equitable settlement distribution and the fiduciary duty owed by class counsel and courts to *all* class members regardless of any perceived timing issues.  Unlike a late claimant, Dealership Members are not asking for full funding of their claims from earlier settlements, but rather only their fair *pro rata* share of the reserve funds remaining for all identified class members to those settlements.  Even if the terms of the Plans would exclude Dealership Members from their share of the cumulative reserve funds, which they plainly do not, it is still well within the Court's broad equity powers to provide reserve fund distribution to all identified class members in order to provide compensation for their injuries at the hands of Defendants.  Moreover, where an inequitable distribution exists, such as here under class counsel's position as to reserve fund eligibility, it is "incumbent upon the district court to exercise its broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members more equitably."  *See Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *see also* Manual for Complex Litigation § 21.662 (4th ed. 2004) (courts may "consider ordering a reserve for late claims").

A.      **Court's Equitable Powers Extend to All Class Members Not Just Early Filers**

Courts recognize that "every opportunity should be afforded [to] class members . . . to come forward and collect their rightful share of the settlement." *In re Folding Carton Antitrust Litig.*, 557 F.Supp. 1091, 1104 (N.D. Ill. 1983), aff'd in part, 744 F.2d 1252 (7th Cir. 1984). In doing so, courts prioritize their "inherent power and duty to protect unnamed, but interested persons" in the class. *Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972). Further, "[t]hese equitable powers are retained by the court until the settlement fund is actually distributed." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 321 (3d Cir. 2001) ("A primary use of these equitable powers is balancing the goals of expedient settlement distribution and the consideration due to late-arriving class members."). To balance these inequities, reserve or residual funds are routinely used to compensate class members who might otherwise be left uncompensated for their harms. *See, e.g.,* TFT-LCD Flat Panel Order at 3: 2-4, 9-13 (court ordered late claims to be paid from residual funds) (App. Ex. 5 at 3.); *see also Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09-3690, ECF Nos. 786, 802   (N.D. Ill. 2016) (at distribution, class counsel recommended and court approved reserve fund "to make equitable adjustments . . . to claims following the initial distribution") (App. Ex. 10 at 12; Ex. 11).

Courts and class counsel recognize the inherent injustice in denying valid claims based on arbitrary deadlines and seek "'to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible.'" *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 496 (S.D.N.Y. 2018) (quoting 4 William B. Rubenstein, Newberg on Class Actions § 12:15 (5th ed.) (Westlaw 2018)). It would be "unfair to prevent otherwise valid claims from participating in the distribution of . . . funds solely because they were submitted after the cut-off dates." *In re Polyurethane Foam Antitrust Litig.*, No. 10-2196, ECF Nos. 2086, 2095, 2172, 2184 (N.D. Ohio) (plaintiffs' distribution motions

11

approved by orders dated May 16, 2016 and Oct. 30, 2017) (App. Ex. 6 at 10; Ex. 7 at 1; Ex. 8 at 3, Ex. 9 at 8.). In particular, given the common fund's equitable origins, "full forfeiture of . . . claims would be an extreme consequence" regardless of claim timing. *Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09-3690, ECF Nos. 786, 802 (N.D. Ill. 2016) (late claims approved by order dated April 18, 2017) (App. Ex. 10 at 7; Ex. 11).

Here, Dealership Members pursued their claims diligently and in good faith, and—unlike actual late claimants—submitted valid Proofs of Claim over a year before the deadline for the final round of settlements. Although class counsel now takes the position that Dealership Members should only be entitled to payouts from settlements in Rounds 3 and 4 based on their claim filing dates, Dealership Members nevertheless remain members of the earlier Settlement Classes and must therefore release all claims against Defendants under those settlements, despite receiving no compensation from those earlier settlements according to class counsel's position. To deny Dealership Members—and the over 1,500 other class members in a similar position— their *pro rata* share of reserve funds when they have been timely identified as class members with valid, processed claims is the height of unfairness and inequity. The reserve funds are available and the claims are identified and substantiated; in the interests of equity, these Settlement Class members deserve their *pro rata* share of the reserve funds.

### B. Class Counsel and Courts Have a Fiduciary Duty to All Class Members

For absent class members such as Dealership Members, the fiduciary duty of both class counsel and the Court is of utmost importance in protecting those class members' interests. As the Sixth Circuit has held, "in class-action settlements the district court cannot rely on the adversarial process to protect the interests of the persons most affected by the litigation— namely, the class. Instead, the law relies upon the fiduciary obligations of the class representatives and, especially, class counsel, to protect those interests." *In re Dry Max Pampers*

*Litig.*, 724 F.3d 713, 718 (6th Cir. 2018) (internal citations omitted).  Further, given the lack of adversarial process, "courts must carefully scrutinize whether those fiduciary obligations have been met."  *Id.*; see also *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005) ("the district court acts as a fiduciary, serving as a guardian of the rights of absent class members"); Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges 11 (Fed. Judicial Ctr. 2010) ("Current rules . . . unambiguously place you in the position of safeguarding the interests of absent class members").  Finally, although deadlines are an important part of administrative case management, courts recognize that "rigid and unquestioned adherence" to those same deadlines runs contrary to the "court's role as fiduciary in class actions when allowing a claimant participation in a settlement works no harm on the conduct of the proceedings and does not significantly prejudice the interests of the parties."  *Orthopedic Bone Screw*, 246 F.3d at 316-17.

At issue here is not a deadline extension—Dealership Members and those similarly situated are timely—but rather the proper exercise of equitable powers and the fiduciary duty owed to these class members to preserve their rights as victims of Defendants' anticompetitive conduct.  However, class counsel would deny Dealership Members, and other class members similarly situated, their share of compensation from the reserve fund payouts for earlier rounds based on adherence to settlement groupings set up only for administrative efficiency.  Dealership Members are not requesting and do not expect to be compensated from the primary funds used for advance payment in early rounds—in most instances, those funds have already been distributed.  Instead, they seek only their share of the reserve funds set aside for all class members with valid claims.  If the goal is "to get as much of available damages remedy to class members as possible," then it follows that class members with timely, valid claims should not be

left uncompensated if there are reserve funds available from earlier settlements. *See In re LIBOR-Based Fin. Instruments*, 327 F.R.D. at 496.

### C. Settlement "Rounds" Were Used for Administrative Efficiency and Do Not Determine Settlement Class Membership

As noted above, the purpose of multiple settlement groupings or "rounds" was intended to serve the "interests of economy" by providing aggregate notice and making funds available once a larger number of settlements had been reached. The four groupings are based on no unique criteria other than the timing around which Defendants happened to settle, and class counsel has emphasized the aggregate recovery versus individual settlements. *See, e.g.,* Dec. 16, 2019 Raiter Decl. at 3 ("When added to the Round One, Round Two, and Round Three settlements, a total of approximately $402,389,786.00 has been recovered in Auto Dealer settlements."). Although each grouping or round had its own claim filing deadline, those deadlines have no bearing on membership in the corresponding Settlement Classes and are arbitrary as relates to reserve fund eligibility to Settlement Class members. Thus, whether a class member filed before or after the deadline in any given round does not impact membership in a Settlement Class and should not impact access to appropriate compensation from reserve funds to those same settlements.

Class counsel created reserve funds to account for "information not currently available about affected, parts, models, and brands," and therefore continued to collect additional information needed for calculations long after round deadlines had passed. Further, in order to distribute reserve funds *pro rata*, it necessarily follows that class counsel first had to settle with every Defendant and then the claims administrator had to process every claim, in order to determine the appropriate reserve fund payouts to all identified class members.

The position class counsel now takes allows the arbitrary deadlines set in each round for administrative convenience to—years later—trump Dealership Members' ability to recover *any* amount for the harms suffered by Defendants' actions and the claims Dealership Members must release against those Defendants.  As discussed above, courts routinely accept *late* claims— sometimes years after a claims deadline—so long as funds have not yet been distributed.  Here, Dealership Members claims' were not only timely but were already approved by the claims administrator in Round 3 and likely nearing completion of review and approval in Round 4.  To use class counsel's interpretation of the Plans would require Dealership Members to release their claims against Defendants for all related claims in all settlement rounds, despite receiving compensation only from those settlements that happen to be grouped in later rounds.  Although administrative convenience has its place in complex claims administration, those efficiencies cannot take precedence over fair and equitable compensation of class members.

### D.   Payment of Reserve Funds to All Identified Members Will Not Prejudice Earlier Filers Nor Unduly Delay Distribution of Settlement Funds

In denying Dealership Members their fair share of reserve funds from early settlements to which Dealership Members are class members, class counsel argues that compensating Dealership Members would "disadvantage" any automobile dealership who had filed earlier claims because "[t]he value of the earlier timely filed valid claims would be diluted by the larger pool of claimants from later settlement rounds."  Burton Decl. Ex. A.  However, that argument runs contrary to principles of equity and established case law, holding that timely claimants have no justifiable expectation to any particular pay-out and, therefore, are not prejudiced by the approval of later submitted claims. *In re "Agent Orange" Prod. Liab. Litig.*, 689 F.Supp. 1250, 1263 (E.D.N.Y. 1988).

Even in instances in which approval of additional claims necessitates a reduction of the *pro rata* payment, such a reduction does not constitute prejudice but rather recognizes that the additional claimants "suffered substantial compensable losses" that require "a more equitable distribution [of funds] among a larger group of injured parties." *In re Authentidate Holding Corp. Sec. Litig.*, 2013 WL 324153, at *1 (S.D.N.Y Jan. 25, 2013); *see also In re Urethane Antitrust Litig.*, No. 04-md-1616, 2008 WL 5215980, *2 (D. Kan. Dec. 12, 2008) (no prejudice where "the remaining members would receive no less in settlement than they would have received" if additional class members participated).   Instead, excluding additional claimants from the settlement unjustly gives the remaining claims "what is essentially a 'windfall,' comprised of some portion of the recovery that would be owed to the otherwise deserving late registrants." *Orthopedic Bone Screw*, 246 F.3d at 324.

Counsel for Dealership Members filed claims in early rounds on behalf of other class members, including one of the Settlements' largest claimants, AutoNation.   These are the same class members that class counsel now maintains would be "disadvantaged" were Dealership Members to receive their fair share of reserve funds from all settlements.   But from the very beginning of these settlements, no class member could have any reasonable expectation of a particular payout as acknowledged by the initial notice, which clearly provided that "it is unknown how much money each Settlement Class member . . . will receive."   Notice-First Phase at 9 (Sept. 17, 2015) *available at* http://www.autodealersettlement.com/case-documents.aspx (last visited July 26, 2020).   Like Dealership Members, claimant AutoNation, for example, agrees that *all* eligible vehicles should count for calculation of reserve fund distribution, regardless of the round in which they were claimed.   Burton Decl. ¶ 13.

In denying Dealership Members' eligibility to reserve funds from early settlements, class counsel also cited the delay that would ensue should they have to hold reserve payments "until all claims by all dealerships in all rounds were reviewed and points calculated." Burton Decl. Ex. A. However, at this stage of the process—near the end of the fourth and final round—all claims processing is already nearing completion. In their own filing in May 2020—nearly two months ago—class counsel stated it was "nearly ready to distribute the settlements achieved" in Round 4. Auto Dealers' Mem. ISO Mot. for Approval of Additional Allocation Plans for Round Four Settlements at 1, *In re Bearings*, No. 2:12-CV-00502-SFC-RSW (May 19, 2020), ECF No. 296 ("Mem. ISO Round 4 Allocation Plans Approval").

Now that every claim has been processed and validated, the claims administrator should be able to allocate reserve funds properly and in a timely manner.[9] Even the claims administrator considered the efficiencies inherent in distributing one check to each class member for their share of all reserve funds rather than separate checks for each round. Burton Decl. ¶ 9. Class counsel's position ignores the valid claims that are before it from identified class members and runs contrary to the entire purpose of the claims process—to fairly compensate class members for the claims they must release against Defendants. If any concerns are raised that allocating reserve funds to *all* Settlement Class members would delay distribution, any such delay would be the result of class counsel and the claims administrator's failure to put in place a process that appropriately allocates reserve funds based on both the plain meaning of the Plans as well as the fiduciary duty class counsel owes *all* Settlement Class members. Dealership

---

[9] If claimed vehicle purchases for every claimant have already been substantiated—as class counsel suggested in its May 19, 2020 motion—the claims administrator should have the data it needs to calculate *pro rata* shares of the cumulative reserve funds based on vehicles purchased by all eligible Settlement Class members. *See* Mem. ISO Round 4 Allocation Plans Approval at 1.

Members should not be penalized for class counsel and the claims administrator's failure to account for all valid claims when calculating distribution of funds held in reserve.

For the forgoing reasons, Dealership Members respectfully urge the Court to enforce the Plans of Allocation to provide for the equitable distribution of reserve funds to all identified class members based on class membership rather than claim filing date.

July 31, 2020

Respectfully submitted,

By: */s/ Jared A. Levine*
Jared A. Levine
Crowell & Moring LLP
590 Madison Avenue
New York, NY 10022
Telephone: (212) 803-4000
Facsimile: (212) 223-4134
Email: jalevine@crowell.com

Deborah E. Arbabi
Daniel A. Sasse
Crowell & Moring LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
Telephone: (949) 263-8400
Facsimile: (949) 263-8414
Email: darbabi@crowell.com
      dsasse@crowell.com

Emma K. Burton
Ann L. Rives
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
Email: eburton@crowell.com
      arives@crowell.com

Attorneys for Dealership Members

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 31, 2020, a copy of the foregoing was filed electronically using the Court's ECF system, which will send notification to each attorney of record by electronic means.  Parties may access this filing through the Court's system.


Dated:  July 31, 2020                                    By: */s/ Jared A. Levine*
                                                                   Jared A. Levine