# EXHIBIT 2

Beecher v. Able, 575 F.2d 1010 (1978)

Fed. Sec. L. Rep. P 96,397

KeyCite Yellow Flag - Negative Treatment

Distinguished by County of Suffolk v. Long Island Lighting Co., E.D.N.Y.,
July 28, 1998

575 F.2d 1010
United States Court of Appeals,
Second Circuit.

Lawrence J. BEECHER et al., Plaintiffs-Appellees,
v.
Charles R. ABLE et al., Defendants,
and four other actions,
McDonnell Douglas Corporation,
Defendant-Appellant.

No. 329, Docket 77-7384.
|
Argued Nov. 30, 1977.
|
Decided April 13, 1978.

**Synopsis**

Appeal was taken from order of the United States District
Court for the Southern District of New York, Constance
Baker Motley, J., 441 F.Supp. 426, denying reversion to
defendant of a portion of a fund provided by a settlement
approved by Constance Baker Motley, J., 72 F.R.D. 518,
and reallocating the proceeds of the fund among plaintiff
classes where the number of claimants against the fund
proved to be less than had been estimated. The Court of
Appeals, Bonsal, District Judge, sitting by designation, held
that: (1) reformation of agreement settling actions to permit
reversion of portion of settlement amount to defendant was
not warranted on basis that both sides to settlement agreement
had been mistaken at time of agreement with respect to
number of potential claimants and that neither side anticipated
that the number of claims actually filed would be so few in
number; (2) by agreeing that no portion of settlement fund
would revert to defendant, regardless of number or amount
of claims allowed, defendant expressly assumed risk that
estimated number and amount of claims might be incorrect so
that low turnout of claimants provided no basis for granting
rescission of settlement agreement, and (3) in view of unusual
situation, even though court concluded that order of district
court should be affirmed, appellee defendants would not be
awarded punitive damages and double costs on ground that
issues raised by defendant on appeal were frivolous.

Affirmed.

West Headnotes (10)

**[1]   Reformation of Instruments    Grounds for
Reformation**

Reformation of agreement to settle action is
appropriate only to conform agreement to
accurately reflect intentions of parties at time of
the agreement.

9 Cases that cite this headnote

**[2]   Reformation of Instruments    What
mistakes are mutual**

Reformation of agreement settling actions to
permit reversion of portion of settlement amount
to defendant was not warranted on basis that
both sides to settlement agreement had been
mistaken at time of agreement with respect to
number of potential claimants and that neither
side anticipated that number of claims actually
filed would be so few in number.

5 Cases that cite this headnote

**[3]   Federal Civil Procedure    Reconsideration,
vacation, or setting aside**

By agreeing that no portion of settlement
fund would revert to defendant, regardless of
number or amount of claims allowed, defendant
expressly assumed risk that estimated number
and amount of claims might be incorrect; thus
low turnout of claimants provided no basis for
granting rescission of settlement agreement.

5 Cases that cite this headnote

**[4]   Contracts    Mistake**

In determining whether rescission is warranted
in given circumstance, there must be excluded
from consideration mistakes as to matters which
contracting parties had in mind as possibilities
and as to existence of which they took the risk.

5 Cases that cite this headnote

Gaettner, 1 &Bd., 593 F.2d 1670 (1578)

Fed. Sec. L. Rep. P 96,397

[5]   **Federal Civil Procedure** 🔑 Reconsideration, vacation, or setting aside

That settlement agreement providing for fixed sum payment to plaintiff classes in general rather than specified sum to each individual claimant had, in light of subsequent events, proved to be more beneficial to plaintiff classes than to defendant did not provide basis for setting aside settlement agreement.

5 Cases that cite this headnote

[6]   **Compromise, Settlement, and Release** 🔑 Disposition of unclaimed or undistributed funds in general

Where reversion to defendant of sum paid in settlement was foreclosed by express terms of settlement agreement and redistribution to three general classes of plaintiffs of excess proceeds under allocation plan's formula would have produced inequitable results, it was incumbent upon district court to exercise its broad supervisory powers over administration of class action settlements to allocate proceeds among class members more equitably.

25 Cases that cite this headnote

[7]   **Compromise, Settlement, and Release** 🔑 Administration and Supervision of Settlements

Until fund created by settlement of class action is actually distributed, court retains its traditional equity powers and has duty to protect unnamed, but interested, persons.

11 Cases that cite this headnote

[8]   **Compromise, Settlement, and Release** 🔑 Processing and Payment of Claims; Distribution of Funds

Court's reallocation of balance of settlement fund to one class of plaintiffs did not result in any unjust enrichment or windfall, although the reallocation would allow members of that class to receive approximately $160 per debenture as opposed to $30 per debenture, as originally allocated, where there was testimony that damages to class members might have been as much as $470 per debenture.

5 Cases that cite this headnote

[9]   **Compromise, Settlement, and Release** 🔑 Processing and Payment of Claims; Distribution of Funds

Reallocation to one plaintiff class of portion of funds originally allocated to two other plaintiff classes did not constitute an improper "fluid class" recovery, inasmuch as the case involved a settlement agreement and defendant had agreed to some "fluidity" with respect to individual class members' recovery by agreeing that no portion of fund would revert to it and, in addition, the allocation plan itself made allowance for "spillover" between classes in event that amount allocated to class exceeded total of allowed claims.

6 Cases that cite this headnote

[10]  **Federal Civil Procedure** 🔑 Frivolousness; particular cases

In view of unusual situation, even though court concluded that order of district court should be affirmed, appellees would not be awarded punitive damages and double costs to be assessed against appellant on ground that issues raised on appeal were frivolous. Securities Exchange Act of 1934, § 10, 15 U.S.C.A. § 78j; Fed.Rules App.Proc. rule 38, 28 U.S.C.A.

## Attorneys and Law Firms

 **\*1011** Pomerantz, Levy, Haudek & Block, Abraham L. Pomerantz, Robert B. Block, New York City, on the brief, for plaintiffs-appellees.

White & Case, Haliburton Fales, 2d, Sharon E. Grubin, New York City, on the brief, for defendant-appellant.

Before MOORE and GURFEIN, Circuit Judges and BONSAL, District Judge. *

Gaebler v. Lord, 591 F.2d 1010 (1978)

Fed. Sec. L. Rep. P 96,397

**Opinion**

**\*1012**   BONSAL, District Judge:

In late 1975 appellant McDonnell Douglas Corporation ("Douglas") and appellees entered into a preliminary stipulation to settle fifteen actions, of which five were class actions, then pending against Douglas. The preliminary stipulation provided that Douglas pay $5,000,000 as consideration for dismissal of these actions. In early 1976 the parties entered into a definitive stipulation of settlement confirming the agreement to settle these actions for $5,000,000. Attached to this definitive stipulation was an allocation plan which provided for the distribution of the settlement proceeds among the various claimants. Both the preliminary stipulation and the definitive stipulation as well as the allocation plan contained provisions barring reversion of any portion of the settlement fund to Douglas.

Subsequent to the entry of judgment approving the settlement and dismissing the actions, when the actual number of claimants proved to be less than estimated both sides moved in the district court (Motley, J.) to modify the allocation plan. Plaintiff and Douglas moved for equitable reallocation of the settlement proceeds; in addition, Douglas moved for reversion to it of a substantial portion of the fund. Judge Motley denied Douglas' application for reversion and granted the equitable reallocation sought by plaintiffs. This appeal follows.

We affirm.

*Background*

1. Summary of History of the Litigation through Settlement.

Between 1966 and 1968 holders and former holders of Douglas securities commenced a total of fifteen actions against Douglas based on alleged violations of the federal securities laws, all of which actions were assigned to Judge Motley. Five actions were denominated as class actions, eight were individual actions, and two were derivative actions.

In 1969 the five actions denominated as class actions were certified as class actions by Judge Motley. ( 47 F.R.D. 11.) Three classes were established: Class 1, persons who purchased Douglas common stock between January 19, 1966 and September 29, 1966; Class 2, persons who converted Douglas 4% debentures due February 1, 1977 into Douglas common stock as of May 3, 1966; and Class 3, persons

who purchased Douglas 43/4% debentures due July 1, 1991 between July 12, 1966 and September 29, 1966. On June 30, 1970, Judge Motley decided to proceed first with the five class actions and stayed proceedings with respect to the remaining actions.

In 1974 Judge Motley tried the debenture holder (Class 3) action based on alleged violations by Douglas of section 11 of the Securities Act of 1933. After separate trials on liability and damages, the Court found Douglas liable to Class 3 debenture holders under section 11 and assessed damages at $30 per debenture or actual loss if less.

Thereafter, Judge Motley found Douglas liable to the Class 3 debenture holders under section 10 of the Securities Exchange Act of 1934 and Rule 10b-5 and scheduled trial on damages to commence on December 3, 1975.

On December 1, 1975 counsel for Douglas and lead counsel for the plaintiff classes entered into a preliminary stipulation of settlement to cover all of the above-mentioned actions pending against Douglas. Under the terms of the preliminary stipulation it was agreed that Douglas would pay $5,000,000 as consideration for settlement of the five class actions and the eight individual actions; it was further agreed that Douglas would move to dismiss the two derivative actions.

The preliminary stipulation of settlement was expressly conditioned upon final judicial approval pursuant to  Rule 23(e) Fed.R.Civ.P. and dismissal of the pending actions. Douglas was to make payment of the settlement consideration on April 30, 1976 if these conditions were met as of that date; otherwise the above sum was to draw interest on behalf of the plaintiff classes as of that date.

**\*1013**   The preliminary stipulation of settlement further provided that "if the settlement is finally approved and consummated, no part of the settlement fund will revert to Douglas, regardless of the number and the amount of claims allowed against the fund." [1] Finally, it was agreed that the parties would submit a further stipulation of settlement which would include, among other things, a plan for allocation of the settlement proceeds among the three classes.

On December 3, 1975, Judge Motley signed the preliminary stipulation of settlement. On January 23, 1976, the court dismissed the two derivative actions pursuant to Rule 41(b) Fed.R.Civ.P. On January 31, 1976 the Court dismissed the eight individual actions and ordered plaintiffs in those actions included as class members.

Beecher v. Able, 575 F.2d 1010 (1978)

Fed. Sec. L. Rep. P 96,397

On February 11, 1976 the parties executed the definitive stipulation of settlement contemplated in the preliminary stipulation. In language similar to that contained in the preliminary stipulation the definitive stipulation provided that "in no event will any part of the settlement proceeds revert to Douglas, regardless of the number or amount of claims allowed." [2] In addition, the definitive stipulation provided for the distribution of the net settlement proceeds remaining after payment of attorneys' fees and disbursements among and within the three classes in accordance with an allocation plan attached to the definitive stipulation.

Under the allocation plan, members of Class 1 who purchased Douglas common stock between March 25, 1966 and June 1, 1966 and who did not thereafter sell their stock prior to June 2, 1966 were to be allowed claims against the fund in an amount of 3% of their purchase price. Members of Class 2 who converted their debentures as of May 3, 1966 (the effective date of conversion) into common stock and who did not sell that common stock prior to June 2, 1966 were to be allowed claims against the fund in an amount of $2.84 per share of common stock (which was 3% of the average price of Douglas common stock as of the date of conversion). Members of Class 3 who purchased Douglas 43/4% debentures between July 12, 1966 and September 26, 1966 and who did not sell their debentures prior to September 27, 1966 were to be allowed claims in the amount of $30 per debenture, or actual loss if less. Based on the estimated size of each class, the allocation plan projected that the total allowed claims and the percentage of the settlement fund allocable to each class would be as follows:

|  | Allowed Claim | Total Estimated Allowed Claims | Percentage of Fund |
|---|---|---|---|
| Class 1 | 3% of purchase price | $2,800,000 | 51% |
| Class 2 | $2.84 per post-conversion share | 500,000 | 9% |
| Class 3 | $30 per debenture or actual loss, if less. | 2,200,000 | 40% |
|  |  | $5,500,000 | 100% |

The allocation plan also provided that each class's allocation from the fund would be distributed pro rata according to the allowed claims of members of the class, and that distributions might be less or more *1014 than allowed claims, depending upon the total claims filed by members of each class and allowed against the fund. In the event that the amount allocated exceeded the total allowed claims in all three classes, the allocation plan further provided that the excess of the amounts allocated would be combined and redistributed to the classes by allocating 51% of the combined excess to Class 1, 9% to Class 2, and 40% to Class 3. Consistent with the express non-reversion clause contained in both the

Fed. Sec. L. Rep. P 96,397

preliminary stipulation and the definitive stipulation, the allocation plan stated that

> "The entire Fund available for distribution will be paid to Class members. No part of the Fund will revert to Douglas in any eventuality."

On August 9, 1976 Judge Motley filed a memorandum opinion which approved the stipulation of settlement and the allocation plan as fair, reasonable, and adequate ( 72 F.R.D. 518), and on August 25, 1976 she entered final judgment

Class 1:

Class 2:

Class 3:

Because of the small number of claims, both plaintiffs and Douglas applied to Judge Motley for modification of the allocation plan.

Counsel for plaintiffs and Douglas both proposed that the allocation plan be modified by doubling the payments to be made to Class 1 and Class 2 so that Class 1 members would receive 6% of their purchase price, instead of 3%; and Class 2 members would receive $5.68 per post-conversion share, instead of $2.84.

Counsel for plaintiffs also proposed that members of Class 1 and Class 2 receive pre-judgment interest on the amounts so modified and that the balance of the settlement fund remaining thereafter be reallocated to members of Class 3 so that individual members of Class 3 would thus receive approximately $160 per debenture rather than $30 per debenture (or actual loss if less). Douglas objected to these proposals and requested that the unclaimed portion of the fund after distributing the payments to Class 1 and Class 2 revert to Douglas.

In a memorandum opinion filed June 23, 1977, and amended June 30, 1977, Judge Motley held that reversion of any portion of the settlement fund to Douglas was barred by the express terms of the settlement and that relief from the terms

approving the settlement and dismissing the actions with prejudice.

2. Events Leading Up to This Appeal.

In late November 1976 the parties became aware that the number of claims submitted by class members was considerably less than had been projected; the amount of claims from all three classes totalled only approximately $1 million.

On January 14, 1977 Judge Motley ordered republication of the notices concerning the settlement of these actions, which produced only a small number of additional claims aggregating approximately $.3 million. The amount of claims received as a result of both series of notices totalled as follows when broken down according to class:

$737,595

167,176

429,427

was not warranted under established principles of reformation or rescission.

Judge Motley directed that the payment of claims to Class 1 and Class 2 be doubled, that Class 1 and Class 2 be allowed pre-judgment interest, and that the balance of the fund be distributed to Class 3.

*Discussion*

Douglas appeals from that portion of the district court's order which denied Douglas reversion of any portion of the settlement fund, granted pre-judgment interest to Class 1 and Class 2, and reallocated the balance of the settlement fund to Class 3.

Douglas contends that the district court erred in denying reversion of any portion of the fund to Douglas. In effect, Douglas contends that, notwithstanding the non-reversion language of the settlement agreement, reversion should be permitted because of the low turnout of claims. Douglas contends that modification of the agreement to provide for reversion is necessary **\*1015** to avoid what it characterizes as an inequitable windfall to those class members who have filed claims.

Douglas argues that both sides to the settlement agreement were mistaken at the time of the agreement with respect to the

number of potential claimants and maintains that neither side anticipated that the number of claims actually filed would be so few in number. Accordingly, Douglas contends that relief by reformation or rescission should be afforded here to allow reversion of the unclaimed portion of the settlement fund to Douglas.

[1] It is well established that reformation is appropriate only to conform an agreement to accurately reflect the intentions of the parties at the time of the agreement 13 S. Williston, Contracts s 1549 (3d ed. 1970); Restatement of Contracts, s 504, comment c at 969 (1932); Schongalla v. Hickey, 149 F.2d 687, 690 (2d Cir.), cert. denied, 326 U.S. 736, 66 S.Ct. 46, 90 L.Ed. 439 (1945); Brubruk Co. v. United States Postal Service, 404 F.Supp. 691, 693 (E.D.N.Y.1975), aff'd, 538 F.2d 308 (2d Cir.), cert. denied, 429 U.S. 834, 97 S.Ct. 99, 50 L.Ed.2d 99 (1976). "It is not what the parties would have intended if they had known better, but what did they intend at the time, informed as they were." Russell v. Shell Petroleum Corp.,66 F.2d 864, 867 (10th Cir. 1933).

[2] Thus reformation would be proper here only if Douglas could show that the parties had anticipated this possibility and had verbally agreed that in the event that claims were very low a portion of the fund would be allowed to revert to Douglas, but that this verbal agreement was mistakenly or inadvertently omitted from the written settlement agreement. As noted above, however, Douglas' contention here is not that this had been the parties' intention at the time of the agreement but rather that the parties had not considered this possibility at all. Even if the parties were mistaken in their assessment of the potential number of claimants against the fund, as Douglas contends, this would not be a basis for relief by reformation. "A mistake as to the existing situation, which leads either one or both of the parties to enter into a contract which they would not have entered into had they been apprised of the actual facts, will not justify reformation." Russell v. Shell Petroleum Corp., supra. See 3 A. Corbin, Contracts s 614 at 728 (2d ed. 1960). We therefore agree with the district court that reformation which would permit reversion is unwarranted under the circumstances presented here.

[3] [4] Douglas' contention that the low turnout of claimants provides a basis for granting rescission of the settlement agreement is likewise without merit. See Leasco Corp. v. Taussig, 473 F.2d 777, 781-82 (2d Cir. 1972). Even if both parties had been mistaken as to the number of class claimants and had not expected that the turnout would be so low, by agreeing that no portion of the fund would revert to Douglas "regardless of the number or

amount of claims allowed" Douglas had expressly assumed the risk of mistake that the estimated number and amount of claims might be incorrect. "To the extent that . . . there is a term in a valid agreement that the risk as to the existence of an assumed state of facts is to be upon (one of the contracting parties), there can be no rescission of the transaction for mistake as to such facts." Restatement of Restitution, s 11(1), comment d at 46 (1937); see United States v. Hathaway, 242 F.2d 897 (9th Cir. 1957); cf. American Elastics, Inc. v. United States, 187 F.2d 109 (2d Cir. 1951). In other words, in determining whether rescission is warranted in a given circumstance, "there must be excluded from consideration mistakes as to matters which the contracting parties had in mind as possibilities and as to the existence of which they took the risk." Williston, supra, s 1543 at 75.

[5] Furthermore, there is no evidence that the inclusion of this non-reversion provision in the settlement agreement was a result of misrepresentation or undue influence on the part of counsel for plaintiffs. It is readily apparent that Douglas could easily have avoided the predicament with *1016 which it is now faced had it chosen to pay a specified sum to each individual claimant rather than a fixed-sum payment to the classes in general. However, by opting for the fixed-sum payment Douglas had effectively assured itself an upper limit on its possible liability. The fact that this settlement, freely entered into by experienced counsel on both sides, has in light of subsequent events proven to be more beneficial to the plaintiff classes than to Douglas does not now provide a basis for the agreement to be set aside. Strange v. Gulf & South American Steamship Co., 495 F.2d 1235, 1237 (5th Cir. 1974); Bernstein v. Brenner, 320 F.Supp. 1080, 1086 (D.D.C.1970).

[6] [7] This is not to say that the district court was without power to otherwise modify the agreement with respect to the allocation of the settlement proceeds. Since reversion was foreclosed by the express terms of the settlement and since redistribution of the excess proceeds under the allocation plan's formula would have produced what both sides acknowledged to be inequitable results, it was incumbent upon the district court to exercise its broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members more equitably. As this Circuit has previously had occasion to observe:

"Until the fund created by the settlement is actually distributed, the court retains its traditional equity powers. It

is not novel law to announce that a court supervising the distribution of a trust fund has the inherent power and the duty to protect unnamed, but interested persons." Zients v. LaMorte, 459 F.2d 628, 630 (2d Cir. 1972).

Moreover, in the instant case, the district court, in entering judgment, had expressly reserved to itself "jurisdiction over the effectuation of settlement, including all matters and controversies relating to the processing and fixation of claims . . . " Accordingly, the district court properly exercised its jurisdiction over the settlement of these actions in providing for a more equitable distribution of the settlement fund.

Although Douglas objects to the district court's allowance of pre-judgment interest to Class 1 and Class 2 on the ground that there had been no prior finding of liability to serve as a predicate for such interest, this contention overlooks the fact that the court's action in this regard was based not on legal principles governing the award of interest but rather upon the court's duty to insure equitable allocation of the proceeds of settlement. See Zients v. LaMorte, supra.

**[8]** **[9]** Nor do we find any basis to support Douglas' contention that the court's reallocation of the balance of the settlement fund to Class 3 has resulted in any unjust enrichment or windfall. Although the court's reallocation will allow members of Class 3 to receive approximately $160 per debenture as opposed to $30 per debenture (or actual loss if less), there was testimony at trial of the Class 3 action that damages to Class 3 members might have been as much as $470 per debenture. As the court noted when it reallocated the balance of the fund to Class 3, it was possible that the amount of damages assessed by the court at trial might have been substantially increased on appeal had this settlement not intervened.[3] Moreover, while the district court found Douglas liable as well to the Class 3 debenture holders under Section 10 of the 1934 Act and Rule 10b-5, it did not ***1017** reach the issue of damages due to the intervening settlement.

Douglas' remaining contentions are clearly without merit and do not merit discussion.

For the foregoing reasons, the order of the district court modifying the allocation of the settlement proceeds is affirmed.

*Plaintiffs' Motion for Punitive Damages and Costs*

**[10]** Plaintiffs move pursuant to Rule 38 Fed.R.App.P.[4] for punitive damages and double costs to be assessed against Douglas on the ground that the issues raised by Douglas on this appeal are frivolous. Although we have concluded that the order of the district court should be affirmed, we do not find the appeal to have been frivolous in view of the unusual situation here presented. Accordingly, plaintiffs' motion is denied.

The decision of the district court is affirmed.

**All Citations**

575 F.2d 1010, Fed. Sec. L. Rep. P 96,397

## Footnotes

* Of the Southern District of New York, sitting by designation.

1 This provision was contained in paragraph 6 of the preliminary stipulation which reads in its entirety as follows: "All other expenses incurred in presenting the settlement for judicial approval, including class notice expense, will be advanced by Douglas and will be reimbursed to it out of the settlement fund if the settlement is approved and consummated; if the settlement fails for any reason, such expense will be borne by Douglas without reimbursement. If the settlement is finally approved and consummated, no part of the settlement fund will revert to Douglas, regardless of the number and the amount of claims allowed against the fund. Allowances to plaintiffs and their counsel and accountants for litigation services and expenses may be made by the Court only out of the settlement fund."

2 This provision was contained in paragraph 8 of the definitive stipulation, which reads in its entirety as follows:

 © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Beecher v. Able, 575 F.2d 1010 (1978)

Fed. Sec. L. Rep. P 96,397

"The net settlement proceeds will be allocated among and within the classes in accordance with the Allocation Plan (whose effective provisions will be set forth in the class notice annexed to Exhibit A hereto). In no event will any part of the settlement proceeds revert to Douglas, regardless of the number or amount of claims allowed."

3   Douglas also contends that reallocation to Class 3 of a portion of the fund originally allocated to Classes 1 and 2 constitutes a type of "fluid class" recovery which earlier decisions of this Court have expressly rejected.

Van Gemert v. Boeing Co., 553 F.2d 812, 815-16 (2d Cir. 1977); Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir. 1973), vacated and remanded on other grounds, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Neither Van Gemert nor Eisen, however, involved a settlement agreement. As the district court noted in rejecting this contention, Douglas had agreed to some "fluidity" with respect to individual class members' recovery by agreeing that no portion of the fund would revert to Douglas. In addition, the allocation plan itself made allowance for "spillover" between the classes in the event that the amount allocated to a class exceeded the total of allowed claims.

4   Fed.R.App.P. 38 provides:

"If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee."

---

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.